USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: October 23, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                            :

TIMOTHY JOHN KENNEDY,        :
                            :

                  Plaintiff,     :        12 Civ. 4166 (KPF)
                            :

           v.             :       OPINION AND ORDER
                            :

CITY OF NEW YORK, *et al.*,    :
                            :

                Defendants. :
                            :

------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

In early 2011, Plaintiff Timothy John Kennedy was arrested by two officers of the New York City Police Department (the "NYPD"), following a report that someone had been slashing car tires. In the instant litigation — which was commenced before his eventual criminal conviction — Kennedy asserts federal and state civil rights claims arising from his arrest, naming as Defendants the City of New York and nine individual NYPD officers.[1]

---

[1] Kennedy's Second Amended Complaint (or "SAC") lists as Defendants seven named individuals and two John Does. (SAC 2-3). In the factual allegations portion of that Complaint, however, Kennedy mentions an additional individual, Sergeant Daniel Mulvey, as having played a role in the instant events. The Court recognizes that a case caption does not conclusively govern whether an individual has been made party to a case; on the contrary, courts have found *pro se* complaints to plead claims sufficiently against defendants not named in the caption when there are adequate factual allegations to establish that the plaintiff intended them as defendants. *See, e.g., Ocasio* v. *Riverbay Corp.*, No. 06 Civ. 6455 (PAC) (KNF), 2007 WL 1771770, at *7 (S.D.N.Y. June 19, 2007) (finding that the text of the complaint established an individual as the intended defendant despite lack of specificity in the caption). In the present case, however, Kennedy's multiple successive complaints fail to show that Mulvey was an intended defendant. While Kennedy replaced other "John Does" in the case caption with named defendants after ascertaining their respective identities, he chose not to do so with Mulvey. Furthermore, it is not clear from the facts alleged what claims, if any, Kennedy could assert against Mulvey. Consequently, the Court does not construe the Second Amended Complaint to name Mulvey as a Defendant.

Specifically, the Court construes the Second Amended Complaint to claim, as to the City, failure to instruct, supervise, and control under 42 U.S.C. § 1983; and as to the individual Defendants, false arrest, false imprisonment, malicious prosecution, and defamation under both New York State law and § 1983; deliberate indifference, unlawful search and seizure, use of excessive force, and deprivation of property under § 1983; and intentional infliction of emotional distress, assault, and battery under New York State law.  The City and six individual Defendants have moved to have most of Kennedy's claims dismissed pursuant to Federal Rules of Procedure 12(c) and 12(b)(6).[2]  For the reasons given in this Opinion, the Court grants Defendants' motion in part and denies it in part.

## BACKGROUND[3]

### A.    Factual Background

On the evening of February 26, 2011, two NYPD officers arrested Kennedy outside of his apartment building.  While Kennedy initially identified the arresting officers as John Does, and later believed one of them to be an "Officer Domme," his First Amended Complaint identifies them as Officers Christopher Noto and Jennifer Longo.  (FAC ¶ 1).[4]  Kennedy describes his

---

[2]    Defendants have not moved to dismiss Kennedy's claims against Defendants Noto and O'Connell for excessive force, assault, or battery.

[3]    The facts set forth herein are drawn from the Memorandum of Law in Support of Defendants' Partial Motion to Dismiss the Second Amended Complaint ("Def. Br.") (Dkt. #100), and the exhibits submitted therewith ("Def. Ex.") (Dkt. #101); Plaintiff's Complaint ("Compl.") (Dkt. #2); Plaintiff's First Amended Complaint ("FAC") (Dkt. #29); and Plaintiff's Second Amended Complaint ("SAC") (Dkt. #63).

[4]    Jennifer Longo has since changed her surname to O'Connell and been promoted to Detective.  (Dkt. #73).  The Court refers to her as Detective O'Connell in the remainder of this Opinion.

arrest as an "attack[] from behind," in which he was knocked to the ground and "his face was repeatedly bashed into the sidewalk." (SAC ¶ 2). Kennedy further alleges that during the arrest Officer Noto said, "If I want to kill you, I can kill you," removed items from Kennedy's pocket, and twice grabbed Kennedy's crotch. (*Id.* at ¶¶ 3-4). The officers then put Kennedy in a police car, and Kennedy blacked out during the drive to the police station. (*Id.* at ¶¶ 5-6).

Upon arriving at the station, Kennedy states that a sergeant questioned him, "digging something into his chest" and saying, "[t]alk to me, Mr. Kennedy. If you don't talk to me, I'm going to do this all night." (SAC ¶ 7). Kennedy initially identified this sergeant as John Doe 3 (Compl. ¶ 7), but later named him as Lieutenant Andrew Arias in his Second Amended Complaint (SAC ¶ 7).[5] After about 20 minutes at the precinct, Kennedy was taken to Saint Luke's Hospital, where he was placed on a respirator and shackled to his hospital bed. (*Id.* at ¶¶ 8-10).

Kennedy states that at one point during his hospital stay, a police officer ordered a nurse to remove the bandage she had placed around Kennedy's ankle to protect his skin from abrasion. (SAC ¶ 13). Kennedy's original Complaint identifies the ordering officer as John Doe 4 (Compl. ¶ 12); his First Amended Complaint adds by way of description that this officer was from the "26th precinct" (FAC ¶ 12); and his Second Amended Complaint names the

---

[5]     Andrew Arias was promoted from Sergeant to Lieutenant in 2012, and is referred to as Lieutenant Arias in the remainder of this Opinion.

officer in question as Officer Bayan Gbonoi (SAC ¶ 13). [6]  Kennedy's Second
Amended Complaint additionally asserts, for the first time, that Officer
Kathleen Clifford turned on the television while guarding Kennedy in his
hospital room in order to watch the Super Bowl, and that this usage of the
television was later billed to Kennedy.  (*Id.* at ¶ 11).

Kennedy was released from the hospital into police custody on March 3,
2011.  (SAC ¶ 14).[7]  He alleges that the officers responsible for taking him back
to the police station grabbed confidential medical paperwork from his hands,
asked him if he had HIV, and laughingly discussed the contents of his medical
records.  (*Id.*).  Kennedy's successive complaints name these officers only as
John Does 5 and 6.

After his return to the precinct, Kennedy alleges that he was held for
three hours, without an opportunity to call his attorney, while waiting for
transport to 100 Centre Street.  (SAC ¶ 16).  Kennedy states that one of the
transporting officers — also identified initially as "Officer Domme," but named
in the Second Amended Complaint as Officer Richard Conde — forced him to
stand outside for 10 to 15 minutes in the freezing cold, without a shirt or
jacket, both before and after the transportation.  (*Id.* at ¶ 17).  Kennedy was

---

[6]     The Clerk of Court is directed to amend the case caption to reflect the correct spelling of
Officer Bayan Gbonoi's name.

[7]     The operative complaint states the date of Kennedy's discharge as March 3, 2012.  (SAC
¶ 14).  However, his arrest date was February 26, 2011 (*id.* at 2; Def. Ex. B), and the
events described in his complaint span five days (*see* SAC ¶ 19).  The Court therefore
treats the 2012 date as a scrivener's error and uses March 3, 2011, as the date of
Kennedy's discharge from custody.

arraigned the evening of March 3, 2011, the same day he was released from the hospital.  (*Id.* at ¶ 19).

When Kennedy went to retrieve his belongings from the NYPD following his arraignment, he found that an antique gold eyeglass was missing.  (SAC ¶ 20).  He states that he attempted to file a grand larceny report, but that the officer on duty, Sergeant Daniel Mulvey, prevented him from doing so.  (*Id.*).

Finally, Kennedy asserts that unspecified police officers falsely told Kennedy's family, his friends, and hospital staff members that he had been "caught in the act of slashing police tires," and further informed his friends that the police had video evidence of the alleged crime.  (SAC ¶ 22).  Kennedy states that no such evidence was produced at trial.  (*Id.*).  Kennedy was ultimately tried in New York County Criminal Court and convicted in December 2012 of Attempted Criminal Mischief in the Fourth Degree.  (Def. Ex. B).

## B.    Procedural Background

Kennedy first filed a *pro se* complaint in this matter on May 24, 2012, naming the City of New York, seven John Doe police officers, and one civilian Jane Doe as defendants.  (Compl. 1-2).  On November 27, 2013, Kennedy filed his First Amended Complaint, substituting Officer Christopher Noto and Detective Jennifer O'Connell as John Does 1 and 2 (FAC ¶ 1), and Francesca Zambello as Jane Doe (*id.* at ¶ 20).  Kennedy filed a Second Amended Complaint on August 11, 2014, substituting Lieutenant Andrew Arias as John Doe 3 (SAC ¶ 7), Officer Bayan Gbonoi as John Doe 4 (*id.* at ¶ 13), and Sergeant Daniel Mulvey as John Doe 7 (*id.* at ¶ 20).  While Kennedy's original

and First Amended Complaints both name the transporting officer who made Kennedy stand in the cold as "Officer Domme," who was also named as an arresting officer, Kennedy's Second Amended Complaint names this individual as Officer Richard Conde.  (*Id.* at ¶ 17).  The Second Amended Complaint further adds as Defendants Officers Russell Bast and Kathleen Clifford, and drops any claims against Francesca Zambello.  (*Id.* at ¶¶ 11, 17).

The City filed its Answer on August 21, 2014.  (Dkt. #64).  On March 5, 2015, the City and individual Defendants Arias, Bast, Clifford, Conde, Gbonoi, and O'Connell jointly filed a motion to dismiss, with the City moving pursuant to Federal Rule of Civil Procedure 12(c), and the individual Defendants moving pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. #99-100).  Kennedy filed his Affirmation in Opposition to Defendants' Motion to Dismiss on April 14, 2015 (Dkt. #107), and Defendants informed the Court that they would not be filing a Reply and briefing should thus be considered complete on April 27, 2015 (Dkt. #108).

## DISCUSSION

### A.   Applicable Law

#### 1.   Motions Under Rule 12(c) and 12(b)(6)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The applicable standard for a motion for judgment on the pleadings is the same as that used for a motion to dismiss pursuant to Rule 12(b)(6).  *Sheppard* v. *Beerman*, 18 F.3d 147, 150

(2d Cir. 1994); *accord L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).  When considering either type of motion, a court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)).  A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("[W]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks omitted)).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

"[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted) (citing *Graham* v. *Henderson,* 89 F.3d 75, 79 (2d Cir. 1996)); *accord McPherson* v. *Coombe*, 174

F.3d 276, 280 (2d Cir. 1999). "That said, the liberal pleading standard accorded to *pro se* litigants is not without limits, and all normal rules of pleading are not absolutely suspended." *Hill* v. *City of New York*, No. 13 Civ. 8901 (KPF), 2015 WL 246359, at *2 (S.D.N.Y. Jan. 20, 2015) (internal quotation marks omitted).

### 2.    Claims Brought Under 42 U.S.C. § 1983

Kennedy brings a number of his claims under § 1983, which establishes liability for deprivation, under the color of state law, "of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt* v. *Cole*, 504 U.S. 158, 161 (1992) (citation omitted). As such, a "§ 1983 claim has two essential elements: [i] the defendant acted under color of state law; and [ii] as a result of the defendant's actions, the plaintiff suffered a denial of h[is] federal statutory rights, or h[is] constitutional rights or privileges." *Annis* v. *County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *see also City of Oklahoma City* v. *Tuttle*, 471 U.S. 808, 816 (1985) ("By its terms, of course, [§ 1983] creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.").

**B.      Analysis**

**1.      Several of Kennedy's Claims Are Time-Barred**

**a.      Applicable Law**

Kennedy advances claims under § 1983 for violations of his Fourth, Eighth, and Fourteenth Amendment rights.  Before considering the merits of his claims, however, the Court must first address the antecedent issue of timeliness.  When assessing whether a plaintiff's § 1983 claims have been timely asserted, the applicable statute of limitations is drawn from the most analogous cause of action in the forum state.  *Wilson* v. *Garcia*, 471 U.S. 261, 268 (1985).  The Supreme Court has additionally clarified — in a case dealing specifically with claims brought in New York — that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions" to determine the relevant limitations period.  *Owens* v. *Okure*, 488 U.S. 235, 236 (1989).  Hence the Court looks to the New York Civil Practice Law and Rules, which provides for a three-year limitations period for general personal injury claims.  N.Y. C.P.L.R. 214.

The events giving rise to Kennedy's allegations occurred between February 26, 2011, and March 3, 2011.  (SAC p. 2; ¶¶ 11-19).  The period of limitations expired three years later, on March 3, 2014.  Kennedy filed his initial Complaint on May 24, 2012; his First Amended Complaint on November 27, 2013; and his Second Amended Complaint on August 11, 2014.  The Court must therefore consider whether the operative complaint (i.e., the Second

Amended Complaint), which would be untimely on its own, relates back to Kennedy's earlier, timely-filed pleadings.

Where a plaintiff amends his complaint to bring a claim against a defendant outside of the relevant limitations period, Federal Rule of Civil Procedure 15(c) dictates when that claim will relate back to an earlier-filed pleading.  "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities" — as opposed to having been *mistaken* about their identities — such as when a defendant is initially named as a John Doe.  *Barrow* v. *Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995), *modified*, 74 F.3d 1366 (2d Cir. 1996).  However, the Federal Rules provide another possible avenue for relation back: Under Rule 15(c)(1)(A), a claim may relate back to an earlier-filed pleading when the law providing the limitations period would so allow.  *Hogan* v. *Fischer*, 738 F.3d 509, 517 (2d Cir. 2013).  Under New York law, a named defendant may be substituted for a John Doe if the amending party (i) has exercised "due diligence, prior to the running of the statute of limitations, to identify the defendant by name," and (ii) has described the John Doe defendant "in such a form as will fairly apprise the party that [he] is the intended defendant."  *Id.* at 519 (quotation marks omitted) (modification in original).

### b. Discussion

#### i. The Claims Against Officers Clifford and Bast Are Time-Barred

Kennedy asserts a claim for deprivation of property against Officer Clifford, and possibly of Eighth and Fourteenth Amendment deliberate indifference against Officer Russel Bast, insofar as Bast was present when Officer Conde forced Kennedy to stand in the cold.  (SAC ¶ 17).  Leaving aside for the moment the question of whether Kennedy has stated a claim against either Clifford or Bast, it is clear that any causes of action Kennedy asserts against them would be time-barred.  Kennedy does not make any mention of the events allegedly involving Clifford until the Second Amended Complaint. Similarly, Kennedy does not assert that a second officer was present with Officer Conde until that Complaint.  Because any claims against Officers Clifford or Bast were first raised outside the three-year limitations period, and because no prior pleading was made that could have "fairly apprise[d] the party that [he or she was] the intended defendant," these claims do not relate back to Kennedy's timely-filed complaints.

#### ii. The Claims Against Lieutenant Arias and Officer Gbonoi Are Not Time-Barred

Unlike his claims against Clifford and Bast, Kennedy raised his claims against Lieutenant Arias and Officer Gbonoi in his initial Complaint; he did not, however, identify either defendant by name, but rather labeled them as John Does 3 and 4, respectively.  (Compl. ¶ 7).  Whether Kennedy's subsequent

substitutions of Arias and Gbonoi relate back thus turns on whether Kennedy has satisfied the diligence and notice requirements set forth in *Hogan*.

Kennedy has been active in his attempts to identify the various John Doe officers in this case.  On February 27, 2013, the Court ordered Kennedy to provide Corporation Counsel with as much detail as possible regarding the John Doe officers.  (Dkt. #15).  Kennedy responded on March 28, 2013, stating that he believed he had complied with the Court's order, but also requesting information from the City to help him better identify the officers with whom he had interacted.  (Dkt. #16).  Since that time, Kennedy has amended his complaint twice, each time updating it with the names of the John Doe defendants after being provided with those names by the City.  (Dkt #29, 63).  Kennedy has also consistently communicated with the Court and opposing counsel during the statutory period.  Given Kennedy's *pro se* status, and the added fact that he alleges head trauma and a period of unconsciousness during the instant events — conditions that would no doubt bear upon his ability to recall some details — the Court finds that he has been sufficiently diligent in providing and seeking the information needed to identify Defendants.

The Court also finds that Kennedy provided descriptions of both Lieutenant Arias and Officer Gbonoi in his initial Complaint that were sufficient to ensure that Arias and Gbonoi would be "fairly apprise[d]" that they were the intended defendants.  Defendants' brief highlights the fact that Kennedy provided no physical description of any of the individual defendants in

his timely complaints.  (Def. Br. 15-16).  This is true.  However, physical descriptions are not the only means through which a plaintiff may adequately put an intended defendant on notice.  Courts have found that where a plaintiff provides specific contextual information, that may satisfy the description requirement of C.P.L.R. 1024.  *See, e.g., Ceara* v. *Deacon,* 68 F. Supp. 3d 402, 411-12 (S.D.N.Y. 2014) (finding that a plaintiff's listing of the time, date, location, and precise description of the alleged conduct by a corrections officer would itself constitute "sufficient information about the identity of Defendant" for relation back under C.P.L.R. 1024); *Maurro* v. *Lederman*, 795 N.Y.S.2d 867, 871 (Sup. Ct. 2005) (finding that the plaintiff's description of "'Jane Doe' as a/k/a 'Jane' Usa, M.D., the physician who treated [the plaintiff] at [the defendant's] office whose name is fictitious as presently unknown' was sufficient for [the] purpose" of fairly apprising the defendant that she was the intended defendant); *Duncan* v. *City of New York*, No. 11 Civ. 3901 (ENV) (JO), 2014 WL 3530858, at *3 (E.D.N.Y. July 15, 2014) (finding the defendant "was fairly apprised that he was one of the John Doe defendants against whom [the plaintiff] intended to assert a claim" because, among other things, the relevant complaint specifically described the circumstances of the arrest in which the later-substituted defendant was alleged to have participated and stated that an unidentified officer was present).

With respect to Lieutenant Arias, Kennedy's initial Complaint alleged that a sergeant interrogated him at the 20th Precinct on the evening of February 26, 2011, saying "Talk to me Mr. Kennedy.  If you don't talk to me, I

am going to keep doing this all night." (Compl. ¶ 7).  Taking these allegations

as true, as the Court must on a motion to dismiss, this claim provides the

intended defendant (here, Lieutenant Arias) with a specific time, date, place,

and description of conduct sufficient to permit him to recognize that, though

not named, he was the intended defendant.  Similarly, Kennedy's timely-filed

First Amended Complaint states that while he was in St. Luke's Hospital, "a

police officer from the 26th Precinct, John Doe 4, ordered a nurse to remove a

bandage she had placed around [his] ankle to protect raw skin from the

abrasions caused by the shackle." (FAC ¶ 12).  Again, while this does not

describe the acting officer's physical appearance, it does provide sufficiently

specific information such that, if events occurred as Kennedy describes, Gbonoi

would fairly be expected to recognize himself as the intended defendant.

Consequently, Kennedy's claims against both Arias and Gbonoi relate back to

Kennedy's timely-filed prior pleadings.

### iii.    The Claims Against Officer Conde Are Time-Barred

Unlike Lieutenant Arias or Officer Gbonoi, Officer Conde did not simply

replace a John Doe in Kennedy's complaint; rather Kennedy's Second Amended

Complaint substituted Conde for the previously named "Officer Domme."

(*Compare* FAC ¶ 16, *with* SAC ¶ 17).  This replacement of names qualifies as

the remedying of a mistake, the timeliness of which is governed by Rule

15(c)(1)(C).  *Cf. Barrow*, 66 F.3d at 470 (contrasting the situation in which a

plaintiff names a defendant as a "John Doe" due to ignorance from that in

which the plaintiff names an incorrect defendant due to mistake).  Under that

Rule, an amendment to a pleading relates back to the date of the original pleading when, within the 120-day period for service, the party to be brought in by amendment: "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C); *see also Capitol Records, Inc.* v. *Naxos of Am., Inc.*, 262 F. Supp. 2d 204, 216 (S.D.N.Y. 2003) ("[T]he test is whether the facts alleged in the original complaint give sufficient notice of the conduct and transactions underlying the amendment to avoid unfair and prejudicial surprise to the defendant.").

Furthermore, "[u]nder the constructive notice doctrine, the court can impute knowledge of a lawsuit to a new defendant government official through his attorney, when the attorney also represented the officials originally sued, so long as there is some showing that the attorney[] knew that the additional defendants would be added to the existing suit." *Berry* v. *Village of Millbrook*, No. 09 Civ. 4234 (KMK), 2010 WL 3932289, at *5 & n.6 (S.D.N.Y. Sept. 29, 2010) (internal citations and quotation marks omitted); s*ee also Baez* v. *Kahanowicz*, 469 F. Supp. 2d 171, 177 (S.D.N.Y. 2007) ("[N]otice has been imputed to a new defendant when he shares an attorney with the named defendant, such as when both defendants are government officials represented by the same government attorney[.]"); *see generally Krupski* v. *Costa Crociere, S.p.A.*, 560 U.S. 538, 554-56 (2010).  Hence, as in the case of Lieutenant Arias and Officer Gbonoi, the analysis of whether any claims against Officer Conde

relate back to Kennedy's timely-filed pleadings depends on whether those pleadings provided Conde with sufficient notice that he was the intended defendant. The Court finds that they did not.

Kennedy's initial Complaint describes an officer, alternately identified as John Doe 1 and "Officer Domme," whose badge number "was either 2320 or 2420," who effectuated Kennedy's arrest. (Compl. ¶¶ 1-4). Kennedy specifically alleged that this officer knocked him to the ground "while bashing his head against the sidewalk," took his belongings, twice grabbed Kennedy's crotch, and said, "If I want to kill you, I can kill you." (*Id*.). In that same complaint, Kennedy alleged that this same "Officer Domme" forced Kennedy to stand outside in the cold for 10 to 15 minutes in freezing temperatures. (*Id.* at ¶ 16). Thereafter, in the First Amended Complaint, Kennedy named the arresting officers as "Christopher Noto, badge number 11724, and "police officer Longo [now O'Connell], badge number unknown." (FAC ¶ 1). He reiterated the arrest-related allegations from his original Complaint, but did not specify to which officer he attributed that conduct (in other words, he does not say whether Noto or O'Connell replaced "Officer Domme"). At paragraph 15 of the First Amended Complaint, Kennedy stated that he sat at the 20th Precinct "waiting for the arresting officers to transport him to 100 Centre St.," and that subsequently "Officer Domme arrived" to take him to 100 Centre Street for his arraignment. (*Id.* at ¶ 16). Finally, in his Second Amended Complaint, Kennedy alleges that Officer Noto was responsible for the abusive conduct alleged as part of Kennedy's arrest, but names still another NYPD officer,

16

Officer Conde, as the individual who transported him to 100 Centre Street and, in the process, forced him to stand in the cold with the purpose of endangering his health.  (SAC ¶¶ 1-4, 17).

Given this chain of amendments, several factors distinguish Kennedy's addition of Officer Conde from his substitutions of Lieutenant Arias and Officer Gbonoi.  First, Kennedy initially named Conde as "Officer Domme," an individual to whom Kennedy attributed significant conduct that he does not then attribute to Conde in his Second Amended Complaint.  It is one thing to replace a John Doe with a named defendant, or to replace an incorrectly named defendant with the correct one; it is another thing to replace an incorrectly named defendant with two separate defendants, neither one of whom has reason to be aware of — let alone any responsibility for — the other's conduct.  In essence, Kennedy alleged that the same person who violently assaulted him *also* transported him to 100 Centre Street.  Even assuming Officer Conde had a perfect recollection of transporting a detainee on the evening in question, he could not be expected to recognize himself as "Officer Domme" in the initial Complaint, given the other conduct Kennedy attributes to that individual.

In Kennedy's First Amended Complaint, Kennedy identifies the two arresting officers by name, but continues to refer to the transporting officer as "Officer Domme," thereby indicating that they are in fact different individuals.  (FAC ¶¶ 1, 16).  However, he also states that he was "waiting for the arresting officers to transport him to 100 Centre St." (*Id.* at ¶ 15).  Particularly in light of Kennedy's initial description of events, his First Amended Complaint is

ambiguous regarding whether "Officer Domme" was still another officer involved in his arrest.

As discussed in the context of the claims asserted against Lieutenant Arias and Officer Gbonoi, a lack of physical description of a defendant does not necessarily preclude a complaint from providing the intended defendant with adequate notice. Where, however, the timely pleadings not only lack any sort of physical description, but indeed affirmatively name another individual and set forth an inconsistent account of the actions attributable to the later-added defendant, it cannot be said that the substituted defendant "knew or should have known that the action would have been brought against [him]" but for the plaintiff's mistake. In consequence, the conditions for relation back of Kennedy's claims against Officer Conde under Rule 15(c) are not satisfied, and those claims must be dismissed as time-barred.

## 2. Kennedy Has Failed to Allege a Claim Against the City of New York

### a. Applicable Law

Proceeding now to the merits, the Court first considers Kennedy's claims against the City. The law is clear that municipalities may only be held liable for wrongs "when execution of [the municipality's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [an] injury that the government as an entity is responsible [for] under § 1983." *Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Thus while municipal entities may be sued directly for constitutional violations pursuant to § 1983 under *Monell*, they may not be

held liable for the acts of their employees under the doctrine of *respondeat superior.  Pembaur* v. *City of Cincinnati*, 475 U.S. 469, 478 (1986).  In other words, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  *Segal* v. *City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell*, 436 U.S. at 694) (emphasis in *Segal*).

Establishing municipal liability on a failure-to-train theory requires a plaintiff to meet a particularly high standard.  *See Vanderwoude* v. *City of New York*, No. 12 Civ. 9046 (KPF), 2014 WL 2592457, at *16 (S.D.N.Y. June 10, 2014), *reconsideration denied,* No. 12 Civ. 9046 (KPF), 2014 WL 5139341 (S.D.N.Y. Sept. 30, 2014) (noting the tenuous nature of municipal liability claims premised on a city's failure to train).  Of note, a plaintiff must show that the municipality exercised "deliberate indifference" to the constitutional violations resulting from their deficient training, meaning that policymakers had actual or constructive notice of the causal connection between the failed training system and city employees' constitutional violations.  *Connick* v. *Thomson*, 563 U.S. 51, 131 S. Ct. 1350, 1360 (2011); *see also Castilla* v. *City of New York*, No. 09 Civ. 5446 (SHS), 2012 WL 5510910, at *5 (S.D.N.Y. Nov. 14, 2012).

To trigger failure-to-train liability, the Second Circuit requires a plaintiff to establish three elements:

> [i] First, the plaintiff must show that a policymaker
> knows to a moral certainty that her employees will
> confront a given situation.... [ii] Second, the plaintiff
> must show that the situation either presents the
> employee with a difficult choice of the sort that training
> or supervision will make less difficult or that there is a
> history of employees mishandling the situation....
> [iii] Finally, the plaintiff must show that the wrong
> choice by the city employee will frequently cause the
> deprivation of a citizen's constitutional rights.

*Walker* v. *City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992).  A plaintiff

must also demonstrate "a specific deficiency in the city's training program and

establish that that deficiency is 'closely related to the ultimate injury,' such

that it 'actually caused' the constitutional deprivation."  *Amnesty Am.* v. *Town

of West Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (quoting *City of Canton,

Ohio* v. *Harris*, 489 U.S. 378, 391 (1989)).  Stated differently, "plaintiffs must

establish that the officer's shortcomings ... resulted from ... a faulty training

program rather than from the negligent administration of a sound program or

other unrelated circumstances."  *Id.* at 129-30 (internal quotation marks

omitted).

The Second Amended Complaint falls short of this stringent standard.

Kennedy names the City as a defendant and alleges a cause of action for

"[f]ailure to instruct, supervise, and control," but his complaint makes no

mention of any particular training program, let alone a "specific deficiency" in

that program.  Kennedy has failed to satisfy any of the three requirements set

forth in *Walker*; indeed, he does not even identify which situation (or

situations) amongst those described in his complaint the City has purportedly

failed to train its officers to handle — the putative inadequate training might

pertain to effectuating arrests, managing suspects in the hospital, interrogation techniques, handling medical records, storing a detainee's property, or something else entirely.  And having failed to identify the situation for which the City has inadequately trained its officers, Kennedy has necessarily failed to allege that policymakers knew "to a moral certainty" that the situation would be confronted by employees, that the situation would present a difficult question for employees of the sort that training would help address, or that the "wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."  *Walker*, 974 F.2d at 297-98.

Kennedy has done nothing more than name the City as a Defendant and make a legal assertion of *Monell* and § 1983 liability; he gives no factual support for that claim.  (SAC ¶ 25).  Accordingly, the Court dismisses Kennedy's claim against the City for failure to train, supervise, or instruct its officers.  *See, e.g., George* v. *City of New York*, Nos. 12 Civ. 6365, 13 Civ. 3511, 13 Civ. 3514 (PKC) (JLC), 2013 WL 5943206, at *5 (S.D.N.Y. Nov. 6, 2013) (dismissing plaintiffs' *Monell* claim because, *inter alia*, "[b]eyond listing the City of New York as a party, plaintiffs [had] made no allegations involving the City"); *see also Vanderwoude*, 2014 WL 2592457, at *18 (holding that a plaintiff's claim against the City of New York failed "for the fundamental reason that Plaintiff has set forth no facts to indicate that the City failed to train [its officer] or that the training provided to him was inadequate").

### 3. Kennedy Has Failed to Allege Claims for False Arrest, False Imprisonment, Malicious Prosecution, and Defamation

The Second Amended Complaint does not specify which claims Kennedy asserts against which individual Defendant.  Separate and apart from this pleading deficiency, and as detailed in this section, Kennedy cannot adequately plead claims for false arrest, false imprisonment, malicious prosecution, or defamation under state or federal law.

### a. Applicable Law

### i. The Significance of Probable Cause

To establish a claim for false arrest or false imprisonment under New York law, a plaintiff must show that: (i) he was intentionally confined; (ii) he was conscious of the confinement; (iii) he did not consent to the confinement; and (iv) the confinement was not privileged.  *Ackerson* v. *City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012); *accord Broughton* v. *State of New York*, 37 N.Y.2d 451, 456 (1975).  The federal analogue under § 1983, in turn, is rooted in the Fourth Amendment, which provides an individual with the right to not be arrested without probable cause.  *Weyant* v. *Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("A § 1983 claim for false arrest[] rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause[.]").  Precisely for this reason, a claim for false arrest cannot be established when the arresting officer had probable cause to make the arrest.  *Singer* v. *Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting

officer had probable cause."); *accord Stansbury* v. *Wertman*, 721 F.3d 84, 89, 94 (2d Cir. 2013); *Fulton* v. *Robinson*, 289 F.3d 188, 195 (2d Cir. 2002).

"[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Gonzales* v. *City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852) (emphasis omitted). The standard is "fluid," and demands not "hard certainties," but rather facts sufficient to establish the sort of "fair probability" on which "reasonable and prudent men, not legal technicians, act." *Illinois* v. *Gates*, 462 U.S. 213, 231-32, 238 (1983) (citations and quotation marks omitted).

A claim for malicious prosecution under New York law, by contrast, requires a showing that: (i) the defendant initiated a criminal proceeding; (ii) that was terminated favorably to the plaintiff; (iii) there was no probable cause for the criminal charge; and (iv) the defendant acted maliciously. *See Rothstein* v. *Carriere*, 373 F.3d 275, 282 (2d Cir. 2004) (citing *Savino* v. *City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). To allege a cause of action for malicious prosecution under § 1983, a plaintiff must allege, "in addition to the elements of malicious prosecution under state law, that there was a [ ] sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman* v. *New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

As with a claim for false arrest, probable cause is a complete defense to a claim for malicious prosecution.  *Manganiello* v. *City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) ("[T]he existence of probable cause is a complete defense to a claim for malicious prosecution in New York.").  "The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." *Stansbury*, 721 F.3d at 95.  "In the context of a malicious prosecution claim, probable cause under New York law is 'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.'" *Rounseville* v. *Zahl*, 13 F.3d 625, 629-30 (2d Cir. 1994) (quoting *Pandolfo* v. *U.A. Cable Sys. of Watertown*, 568 N.Y.S.2d 981 (4th Dep't 1991)).  Moreover, the determination of probable cause in a malicious prosecution claim is "assessed in light of the facts known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of arrest." *Drummond* v. *Castro*, 522 F. Supp. 2d 667, 677-78 (S.D.N.Y. 2007).

### ii.    Qualified Immunity

A related issue in this setting concerns qualified immunity, which is "'an immunity from suit rather than a mere defense to liability.'" *Pearson* v. *Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell* v. *Forsyth*, 472 U.S. 511, 526 (1985)). "Under federal law, a police officer is entitled to qualified immunity where [his or her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or it was objectively reasonable for [him or her] to believe that [his or her] actions were

lawful at the time of the challenged act." *Jenkins* v. *City of New York,* 478 F.3d 76, 87 (2d Cir. 2007) (citations and quotation marks omitted); *see also Caceres* v. *Port Auth. of N.Y. & N.J.*, 631 F.3d 620, 622 (2d Cir. 2011).

At the time of Kennedy's arrest, there was clearly a well-established right to be free from arrest without probable cause.  *See Martinez* v. *Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (collecting cases). Therefore, to the extent the Court reaches the issue of qualified immunity in relation to Kennedy's § 1983 claims, the officers' entitlement to it will turn on whether their probable cause determination was objectively reasonable.  "An officer's determination is objectively reasonable if there was arguable probable cause at the time of arrest — that is, if officers of reasonable competence could disagree on whether the probable cause test was met." *Jenkins*, 478 F.3d at 87 (citation and quotation marks omitted); *see also Caldarola* v. *Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (stating that "in situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity").

> ### b.  Discussion
>
> #### i.  Kennedy's Conviction Forecloses His Claims for False Arrest, False Imprisonment, and Malicious Prosecution

The Second Circuit has recognized that in enacting § 1983, Congress intended to incorporate "the common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution ... that the plaintiff can under no circumstances recover if he was convicted of the offense

for which he was arrested." *Cameron* v. *Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986). This is because "[w]here the civil rights plaintiff has been convicted of the offense for which he was arrested, [Second Circuit courts] have in effect accepted the fact of that conviction as conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest." *Id.* at 388. In other words, a plaintiff's conviction following his arrest conclusively establishes that the arresting officers were "objectively reasonable" in their belief that the arrest — as well as the subsequent detention and prosecution — were lawful. *See Singleton* v. *New York*, 632 F.2d 185, 195 (2d Cir. 1980) (stating that in regards to malicious prosecution, "[w]ithout proof that the criminal prosecution based on probable cause was terminated in defendant's favor no federal claim exists"); *Smith* v. *City of New York*, No. 12 Civ. 4572 (KPF), 2013 WL 6158485, at *3-4 (S.D.N.Y. Nov. 25, 2013) (dismissing false arrest and malicious prosecution charges where the plaintiff pleaded guilty to one of the arrest charges).

In the present case, Kennedy was convicted after trial of Attempted Criminal Mischief in the Fourth Degree following his arrest. (Def. Ex. B). This conviction forecloses his ability to bring federal or state claims for false arrest and malicious prosecution, for the reasons set forth above.[8] And even without

---

[8]     Kennedy's claims additionally fail because a § 1983 plaintiff cannot prevail for false arrest, false imprisonment, or malicious prosecution if relief would imply the invalidity of that plaintiff's state conviction. *See Younger* v. *City of New York*, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (dismissing plaintiff's claims for false arrest, false imprisonment, and malicious prosecution because, if successful, they would render plaintiff's conviction invalid). To succeed on his claims, Kennedy would need to show that his conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called

this bar to suit, the Defendant Officers responsible for Kennedy's arrest, detention, and prosecution were *a fortiori* objectively reasonable in believing that probable cause existed to support their actions in arresting and prosecuting him. As a result, Kennedy's claims in this regard are independently subject to dismissal on the grounds of qualified immunity.

### ii. Kennedy Has Failed to Allege a Cognizable Defamation Claim

Under New York law, "[d]efamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Lan Sang* v. *Ming Hai*, 951 F. Supp. 2d 504, 517 (S.D.N.Y. 2013) (internal quotation marks omitted). A cause of action for slander requires "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege." *Albert* v. *Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001); *accord Mosdos Chofetz Chaim, Inc.* v. *RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 214 (S.D.N.Y. 2014).

To the extent that Kennedy alleges state-law defamation, his claim is replete with problems. Kennedy alleges that his family members, friends, and members of the hospital staff were falsely told that he had been "caught in the act of slashing police tires," and that the police had "video proof." (SAC ¶ 22). As a threshold matter, he has not yet identified a speaker, leaving no party to

into question by a federal court's issuance of a writ of habeas corpus." *Heck* v. *Humphrey*, 512 U.S. 477, 486-87 (1994). Kennedy has not made such a showing here.

be held liable; this alone dooms the claim as it currently stands.  *See Thai* v.

*Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (stating that an

adequate defamation claim requires "an indication of who made the

communication, when it was made, and to whom it was communicated"

(quoting *Scholastic, Inc.* v. *Stouffer*, 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000))).

The Court further notes that "truth is an absolute, unqualified defense to

a civil defamation action."  *Biro* v. *Conde Nast*, 883 F. Supp. 2d 441, 458

(S.D.N.Y. 2012) (quoting *Guccione* v. *Hustler Magazine, Inc.*, 800 F.2d 298, 301

(2d Cir. 1986).  Kennedy's assertions of falsity founder on the fact that the

alleged statements concerned events for which Kennedy was ultimately

convicted.  Additionally, a viable claim for slander requires a showing of special

damages, unless the alleged defamation consists of statements "(i) charging

plaintiff with a serious crime; (ii) that tend to injure another in his or her trade,

business or profession; (iii) that plaintiff has a loathsome disease; or (iv)

imputing unchastity to a woman."  *Liberman* v. *Gelstein*, 80 N.Y.2d 429, 435

(1992); *accord Albert,* 239 F.3d at 271; *see also Geraci* v. *Probst*, 15 N.Y.3d 336,

344 (2010).  Here Kennedy alleges no actual damages — and again, given his

subsequent conviction for the crime that was the subject of the relevant

statements, he will almost certainly be unable to do so.

Kennedy may try to fit his defamation claim within the "charge of a

serious crime" prong of slander per se, but, as the New York courts have

explained, "[n]ot every imputation of unlawful behavior...is slanderous per se."

*Liberman*, 80 N.Y.2d at 435.  Rather, "the law distinguishes between serious

28

and relatively minor offenses, and only statements regarding the former are actionable without proof of damage." *Id.*  The unidentified speakers in Kennedy's Second Amended Complaint state that Kennedy was caught engaging in activities that constitute Criminal Mischief in the Fourth Degree, which is a Class A Misdemeanor under New York law.  *See* N.Y. Pen. Law § 145.00.  While statements alleging misdemeanors are not categorically precluded from serving as predicate offenses for a finding of slander per se, the specific conduct described by the officers in this case likely fails to meet the threshold level of seriousness necessary to satisfy the slander per se standard. *See Sprewell* v. *NYP Holdings, Inc.*, 772 N.Y.S.2d 188, 193 (Sup. Ct. 2003) (explaining that "a serious misdemeanor may form the basis for a claim of defamation per se particularly where … it involves a crime that puts another in fear of physical harm" and collecting cases); *Thorsen* v. *Sons of Norway*, 996 F. Supp. 2d 143, 171 (E.D.N.Y. 2014) ("Commission of a misdemeanor usually does not rise to the level of a 'serious crime' for purposes of a defamation *per se* claim."), *reconsideration denied* (May 14, 2014).

Finally, the statements at issue were allegedly made by police officers to Kennedy's friends, family, and hospital staff members regarding the circumstances leading to Kennedy's arrest.  Under New York law, individuals have a qualified privilege to speak on subjects in which they have "an interest, or a legal, moral, or social duty to speak, [when] the communication [is] made to a person having a corresponding interest or duty."  *Peters* v. *Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003); *see also Konikoff* v. *Prudential*

*Ins. Co. of Am.*, 234 F.3d 92, 98 (2d Cir. 2000).  The police statements appear to fall within this privilege.  And to overcome any qualified privilege that might be found to apply, Kennedy would need to show that the statements at issue were made with "spite or ill will," or "with a high degree of awareness of their falsity."  *Peters*, 320 F.3d at 170; *see also Peffers* v. *Stop & Shop Supermarket Co. LLC*, No. 14 Civ. 3747 (VB), 2015 WL 5460203, at \*7 (S.D.N.Y. June 9, 2015); *Konikoff*, 234 F.3d at 89.  Kennedy cannot plausibly do either.

Regarding a possible federal claim for defamation, the Second Circuit held in *Neu* v. *Corcoran* that defamation alone does not clearly violate a constitutionally protected liberty interest absent some other attendant deprivation.  869 F.2d 662, 669 (2d Cir. 1989).  To prevail on such a claim — often called a "stigma-plus" claim — a plaintiff must show "[i] the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and [ii] a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights."  *Vega* v. *Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (internal quotation marks omitted).  The "'plus' prong under this doctrine" is satisfied by "the deprivation of a plaintiff's property" or some other tangible interest.  *Sadallah* v. *City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004).  Notably, the Second Circuit has made clear that "the deleterious effects which flow directly from a sullied reputation [are] normally ... insufficient.  These would normally include the impact that defamation might have on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical

consequence of a bad reputation." *Valmonte* v. *Bane*, 18 F.3d 992, 1001 (2d Cir. 1994).

Kennedy alleges that his family members, friends, and members of the hospital staff were falsely told that he had been "caught in the act of slashing police tires," and that the police had "video proof." (SAC ¶ 22). Leaving aside the question of whether the statements at issue were "sufficiently derogatory," Kennedy does not allege any deprivation of a tangible liberty interest, i.e., he has entirely failed to satisfy the "plus" prong. His claim for defamation under § 1983 must therefore be dismissed.

### 4.    Kennedy Has Failed to Allege a Claim for Deliberate Indifference

The Second Amended Complaint may be broadly construed to raise a claim against Officers Gbonoi and Conde for deliberate indifference. Because Kennedy was in pre-trial state detention during the relevant time period, his claim arises under the Due Process Clause of the Fourteenth Amendment. *See Caiozzo* v. *Koreman*, 581 F.3d 63, 69 (2d Cir. 2009). Eighth Amendment deliberate indifference cases provide a framework for analysis, however, as a detainee's rights regarding the conditions of his confinement are at least as great pre-trial as they are post-conviction. *Calhoun* v. *N.Y.C. Dep't of Corr.*, No. 10 Civ. 182 (LAK) (HBP), 2014 WL 144659 (S.D.N.Y. Jan. 14, 2014) (stating that as between Eighth and Fourteenth Amendment deliberate indifference, "the same standard applies, [and] cases cited that refer to the Eighth Amendment are thus applicable to the conditions of confinement claims alleged by a pretrial detainee" (internal quotation marks and alterations omitted)).

31

The Supreme Court has held that an officer's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle* v. *Gamble*, 429 U.S. 97, 104 (1976). More specifically, such indifference may be manifested through the intentional denial of a prisoner's access to medical care, or the intentional interference with treatment once prescribed. *Id.* A plaintiff seeking to plead deliberate indifference must satisfy two requirements: (i) he must allege deprivation of medical care that objectively rises to a sufficient level of seriousness, and (ii) he must claim that the responsible officer acted with a "sufficiently culpable state of mind" — that is, with "deliberate indifference," which requires that an official "act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin* v. *Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). When determining whether a prisoner's medical condition rises to the requisite level of seriousness, "[f]actors that have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance* v. *Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and alterations omitted).

Kennedy alleges first that Officer Gbonoi ordered a nurse to remove a bandage that was protecting raw skin on his shackled ankle. (SAC ¶ 13). While a layer of padding would undoubtedly make wearing shackles more

comfortable, removal of a bandage that serves primarily to increase the patient's comfort and prevent against abrasion does not constitute interference with a "sufficiently serious" medical condition.  *See, e.g., Hathaway* v. *Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.").  Furthermore, Kennedy makes no allegation regarding Gbonoi's subjective culpability; detained individuals regularly wear shackles without protective padding between the metal and the individual's bare skin without suffering serious harm as a consequence.  Kennedy has failed even to allege a reason Gbonoi should or could have known his actions would produce a substantial risk of serious harm, let alone any actual belief on Gbonoi's part.  For both of these reasons, Kennedy's claim against Officer Gbonoi fails as a matter of law and must be dismissed.

Kennedy's claim against Officer Conde arguably presents a closer call. Kennedy states that Conde "forced [him] to wait outside for 10 or 15 minutes without a shirt or jacket in freezing temperatures," saying "I hope it's cold for you," and acting with "the sole purpose to cause distress and recklessly endanger [Kennedy's] health."  (SAC ¶ 17).  Courts have held that an Eighth Amendment claim may be established by proof that a prisoner was subjected to prolonged periods of bitter cold.  *Gaston* v. *Coughlin*, 249 F.3d 156, 164-65 (2d Cir. 2001); *Corselli* v. *Coughlin,* 842 F.2d 23, 27 (2d Cir. 1988); *Walker* v. *Schult*, 717 F.3d 119, 126 (2d Cir. 2013).  However, Kennedy describes

standing outdoors without a shirt or jacket for approximately 10 to 15 minutes; this scenario likely does not amount to the "prolonged period" of exposure recognized as violative in other cases.  *Cf. Corselli,* 842 F.2d at 27 (summary judgment reversed in favor of defendants where there was evidence that the prisoner plaintiff had been deliberately exposed to bitter cold in his cell for three months); *Gaston*, 249 F.3d at 165 (finding that a prisoner's subjection to temperatures near or well below freezing for a five-month period provided the basis for an Eighth Amendment claim); *see also Trammell* v. *Keane*, 338 F.3d 155, 164 (2d Cir. 2003) (finding that while an inmate kept in a cold cell without clothes for three to four weeks was undoubtedly uncomfortable, the condition did not rise to the level of an Eighth Amendment violation).  In any event, whether Kennedy states a viable claim against Officer Conde is moot, as any claim he might assert would be time-barred.  *See* Discussion B.1.b.iii, *supra*.[9]

In summary, because Kennedy has failed to state a claim for Eighth Amendment deliberate indifference against Officer Gbonoi, and because any claim he might have against Officer Conde falls outside the permissible time limit for such claims, the deliberate indifference claims must be dismissed.

---

[9]     Kennedy initially asserted this claim against an officer later identified as Officer Conde, but in his Second Amended Complaint he additionally alleges that Officer Russel Bast was present during the relevant events.  To the extent that Kennedy asserts a claim for deliberate indifference against Bast, it fails due to the fact that it is similarly time-barred, as explained in Discussion B.1.b.iii, *supra*.

5.   **Kennedy Has Failed to Allege a Fourth Amendment Claim for Unlawful Search and Seizure**

   a.   **Applicable Law**

The Fourth Amendment, incorporated against the states by the Fourteenth Amendment, guarantees all individuals the right to be free from unreasonable search and seizure.   *See, e.g., Mapp* v. *Ohio*, 367 U.S. 643, 655 (1961).   While searches typically require a warrant in order to qualify as "reasonable," the Supreme Court has held "that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."   *United States* v. *Robinson*, 414 U.S. 218, 235 (1973).   Furthermore, "a search incident to the arrest requires no additional justification.   It is the fact of the lawful arrest which establishes the authority to search."   *Id.*

   b.   **Discussion**

Kennedy alleges a § 1983 claim for unlawful search and seizure, but does not specify the defendants against whom he means to assert this claim. Considering the allegations in the Second Amended Complaint, the Court understands the claim to be raised against Defendants Noto and O'Connell, the officers who effectuated his arrest.   Whether Kennedy's claim survives thus turns on whether Noto and O'Connell had probable cause to arrest Kennedy:   If

so, then their search of Kennedy pursuant to that arrest was reasonable as a matter of law.[10]

As previously discussed in relation to Kennedy's false arrest, false imprisonment, and malicious prosecution claims, an individual's criminal conviction conclusively establishes the existence of probable cause for his arrest. *See* Discussion B.3.a.i, *supra*; *see also Weyant*, 101 F.3d at 852 (stating that a conviction not reversed on appeal constitutes conclusive evidence of probable cause for the preceding arrest). Following his arrest, Kennedy was convicted of Attempted Criminal Mischief in the Fourth Degree (Def. Ex. B), and this conviction has not been overturned or invalidated. Thus Defendants Noto and O'Connell presumptively had probable cause for the arrest, and their search of Kennedy pursuant to that arrest was constitutionally reasonable. Kennedy's Fourth Amendment claim for unlawful search and seizure is consequently dismissed.

> ### 6. Kennedy Has Failed to Allege a Procedural Due Process Claim for Deprivation of Property

Kennedy does not list a claim for deprivation of property amongst his enumerated causes of action. (*See* SAC ¶¶ 23-32). However, because his pleadings could reasonably be construed as asserting such a claim under the Fourteenth Amendment, the Court will address it in light of Kennedy's *pro se* status.

---

[10]    The Court here addresses only whether the fact of the search and seizure was reasonable, not the manner in which it was effected. The defendants have not moved to dismiss Kennedy's Fourth Amendment claim for excessive force, and the Court accordingly does not discuss it.

###### a.    Applicable Law

In a § 1983 claim for deprivation of property, it is not enough that a state actor deprived the plaintiff of property; the deprivation must have lacked "due process of law." *Parratt* v. *Taylor*, 451 U.S. 527, 537 (1981) (overruled on other grounds).  "Generally, 'it is sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination'"; the opportunity need not be pre-deprivation.  *Kshel Realty Corp.* v. *City of New York*, 293 F. App'x 13, 15 (2d Cir. 2008) (summary order) (quoting *Hodel* v. *Va. Surface Min. and Reclamation Ass'n, Inc.*, 452 U.S. 264, 303 (1981)); *see also Galdamez* v. *Taylor*, 329 F. App'x 300, 302 (2d Cir. 2009) (summary order) (finding, with respect to a prisoner's deprivation of property claim, that "a postdeprivation remedy is adequate as long as the plaintiff had access to a timely and substantively meaningful review").  Additionally, the negligent loss of a prisoner's belongings by an individual state official does not amount to a "deprivation" of property within the meaning of the Fourteenth Amendment.  *Daniels* v. *Williams*, 474 U.S. 327, 330-31 (1986) (overruling *Parratt* to the extent that it held that "mere lack of due care by a state official may 'deprive' an individual of life, liberty, or property under the Fourteenth Amendment").

Kennedy alleges that when he retrieved his property upon release from detention, an antique gold eyeglass was missing from his belongings.  (SAC ¶ 20).  However, while Kennedy may have alleged a loss of his property, he has not alleged a deprivation without due process of law, inasmuch as New York

provides an appropriate remedy through tort actions for negligence, conversion, and replevin.[11]  Furthermore, Kennedy does not allege that any deprivation of his property was intentional; rather, he simply states that upon receiving his belongings, a valuable item was "missing."  (*Id.*).  As the Supreme Court stated in *Daniels*, "[w]here a government official's act causing injury to life, liberty, or property is merely negligent, no procedure for compensation is *constitutionally* required."  474 U.S. at 333 (quotation marks omitted) (emphasis in original).  Both because Kennedy fails to allege an intentional deprivation, and because even if he had, the constitutionally-mandated process exists at state law, he cannot sustain a Fourteenth Amendment claim for deprivation of property.[12]

### 7.    Kennedy Has Failed to Allege a Claim for Intentional Infliction of Emotional Distress

#### a.    Applicable Law

A plaintiff asserting intentional infliction of emotional distress under New York law must allege conduct "so outrageous in character, and so extreme in

---

[11]    Kennedy does state that when he tried to file a report regarding his missing property, the officer on duty refused to allow him to do so.  (SAC ¶ 20).  This alleged obstruction might have precluded Kennedy from taking advantage of the New York Department of Corrections procedure for inmate personal property claims, set forth in 7 N.Y.C.R.R. §§ 1700.1-1700.10.  However, because Kennedy has meaningful alternative state-tort remedies available to him, the foreclosure of one avenue of recovery does not rise to the level of denial of due process.

[12]    Kennedy's Second Amended Complaint could also be construed to allege a claim for Fourteenth Amendment deprivation of property against Officer Clifford:  He states that she used the television in his hospital room to watch the Super Bowl, and that her use of the television was then charged to Kennedy.  (SAC ¶ 11).  Insofar as this constitutes a "deprivation of property," the analysis regarding available state remedies applies to preclude a § 1983 claim.  Additionally, the Court finds Kennedy's allegation against Officer Clifford factually implausible:  He specifically alleges she turned on the television to watch the Super Bowl, which the Court notes took place on February 6, 2011.  Kennedy was in the hospital from February 26, 2011, to March 3, 2011.  (SAC 2, ¶ 14).  And regardless, any claim against Officer Clifford would be time-barred.  *See* Discussion B.1.b.i, *supra*.

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Naughright* v. *Weiss*, 826 F. Supp. 2d 676, 697 (S.D.N.Y. 2011) (quotation marks omitted). Under New York law, the claim consists of the following four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard for a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and the harm to plaintiff; and (iv) severe emotional distress. *Howell* v. *New York Post Co.*, 81 N.Y.2d 115, 121 (1993).

### b.    Discussion

Kennedy alleges intentional infliction of emotional distress as his fourth cause of action, though he does not indicate against which defendants he intends to make this claim, or for what particular actions.  His Second Amended Complaint directly alleges emotional distress only once, when two officers reportedly read and laughed at his medical records.  (SAC ¶ 14). However, the conduct involved in this incident does not rise to the level of "extreme and outrageous," and, as a practical matter, the defendants involved have not been identified.  Kennedy additionally alludes to emotional distress in relation to his claim against Officer Conde, stating that Conde forced him to stand out in the cold without his shirt or jacket "with the sole purpose to cause distress and to recklessly endanger [Kennedy's] health."  (*Id.* at ¶ 17).  Kennedy stops short, however, of alleging any actual distress experienced on his part, let alone the "severe emotional distress" required to establish a claim; he merely asserts that producing distress was Conde's "purpose."  Furthermore, as

discussed previously, Kennedy's claims against Officer Conde are time-barred. *See* Discussion B.1.b.iii, *supra*. For all of these reasons, Kennedy's claim for intentional infliction of emotional distress must be dismissed.

## C.  Kennedy Will Not Be Given Leave to Replead His Claims

Finally, the Court considers whether to permit Kennedy to file a Third Amended Complaint. The Court notes that Kennedy has not sought such relief, and for this reason the remainder of this section may be superfluous, particularly since several of Kennedy's claims remain after resolution of this motion. However, the Second Circuit has noted that "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis* v. *Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation omitted). The Court will therefore undertake an analysis *sua sponte*.

Given Kennedy's *pro se* status, this Court has taken great pains to construe the allegations in the Second Amended Complaint as liberally as possible, as is evidenced throughout this Opinion. Even granting that solicitude, the Court finds that Kennedy faces insurmountable legal hurdles to a number of his claims that cannot be cured by amended pleading. *See Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (upholding denial of leave to amend *pro se* complaint where proposed amendment would have been futile; "Repleading would thus be futile. Such a futile request to replead should be denied.").

As detailed above, Kennedy's *Monell* claim against the City of New York claim fails as a legal matter, and would be impossible to plead in accordance with *Iqbal* and *Twombly*. His false arrest, false imprisonment, malicious prosecution, unlawful search and seizure, and deprivation of property claims all substantively fail on legal grounds that cannot be remedied by repleading. And while the Court can imagine a set of facts upon which Kennedy could state a viable claim for deliberate indifference, defamation, or intentional infliction of emotional distress, such claims cannot be sustained consistent with the facts that have been repeatedly set forth by Kennedy in his three successive complaints. Accordingly, these claims must be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for judgment on the pleadings in regards to Kennedy's claim against the City of New York for failure to instruct, supervise, and control under 42 U.S.C. § 1983; and further GRANTS Defendants' motion to dismiss in regards to Kennedy's claims against the individual Defendants for false arrest, false imprisonment, malicious prosecution, and defamation under both New York State law and § 1983; deliberate indifference, unlawful search and seizure, and deprivation of property under § 1983; and intentional infliction of emotional distress under New York State law. The Court DENIES Defendants' motion to dismiss Kennedy's claims of excessive force, assault, and battery against Defendant Arias. Defendants have not moved regarding Kennedy's claims for excessive force, assault, and battery as asserted against Defendants Noto and O'Connell.

41

Consequently, the remaining claims in this action are for excessive force, assault, and battery, as alleged against Defendants Arias, Noto, and O'Connell.

The parties are ordered to appear for a pretrial conference on **Thursday, November 12, 2015**, at **2:30 p.m.** in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York, to discuss setting a discovery schedule in this case.  The Clerk of Court is directed to terminate the motion at Docket Entry 99.

SO ORDERED.

Dated:      October 23, 2015
            New York, New York

_____
        KATHERINE POLK FAILLA
        United States District Judge

---

*A copy of this Order was mailed by Chambers to:*

```
Timothy John Kennedy
230 West 82nd Street
Apt. 1D
New York, NY 10024
```