UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
: 
TIMOTHY JOHN KENNEDY,                          :
:
                              Plaintiff,       :
:
              v.                               :
:
CITY OF NEW YORK, *et al.*,                    :
:
                              Defendants.      :
:
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 20, 2016

12 Civ. 4166 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

This civil rights lawsuit involves allegations of excessive force, assault, and battery against three current and former police officers with the New York City Police Department. Following the Court's partial grant of Defendants' motion to dismiss, the parties began discovery. Plaintiff has now filed two motions related to the deposition of Defendant Officer Christopher Noto: a motion to reopen that deposition, and a motion for sanctions. Officer Noto has filed a cross-motion to strike from the record Plaintiff's briefs in support of his motions. For the reasons set forth in this Order, Plaintiff's motion for sanctions is denied; his motion to reopen Officer Noto's deposition is granted in part; and Defendant's motion to strike is denied.

## BACKGROUND[1]

On February 23, 2016, the *pro se* Plaintiff in this matter, Timothy John Kennedy, deposed Defendant Christopher Noto. Early in the deposition, the

---

[1]    For convenience, Plaintiff's brief in support of his motion for sanctions will be referred to as "Pl. Br. Sanctions." (Dkt. #127). Plaintiff's brief in support of his motion to reopen

Court received a phone call from the parties requesting a ruling on whether Officer Noto was required to answer Plaintiff's question regarding Officer Noto's sexual orientation. (Noto Dep. 6:1). The Court ruled that the question unnecessarily delved into Officer Noto's privacy, and that he need not answer the question. (*Id.* at 8:24-9:2).

The Court received a second phone call from the parties later in the deposition, during which the parties requested a ruling on Defendant's request to terminate the deposition. (Noto Dep. 84:16-18). The Court was unavailable, and the parties were informed that the Court would provide a ruling as soon as possible. (*Id.* at 85:8-10). In the interest of efficiency, the parties continued questioning while awaiting the Court's response. (*Id.* at 85:16-19; 90:25-91:4).

Approximately an hour later, the Court contacted the parties to hear Defendant on his request to terminate the deposition. (Noto Dep. 119:20-22). Defense counsel explained that, for the preceding "hour and a half or so," Plaintiff's questions had been "essentially harassment" of the deponent. (*Id.* at 120:19-22). Counsel stated that Plaintiff had been yelling, making personal insults, and asking questions about Nazi Germany, Eric Garner, and other matters irrelevant to the case at hand. (*Id.* at 120:23-121:18). Counsel represented to the Court that she had "repeatedly asked [Plaintiff] to please move on to different areas," but to no avail. (*Id.* at 121:20-22). Plaintiff

---

Officer Noto's deposition will be referred to as "Pl. Br. Reopen." (Dkt. #128). Defendant's brief in opposition and motion to strike will be referred to as "Def. Opp." (Dkt. #131); the transcript of Officer Noto's deposition, included as Exhibit A to the defense submission, will be referred to as "Noto Dep." Although there are three remaining defendants in this case, for the purposes of this Opinion, "Defendant" will refer to Officer Christopher Noto.

responded that he was posing questions "to try and understand the frame of mind, the intentions, the routine procedures and activities of the New York City Police Department," and that defense counsel had been instructing the deponent not to answer and was otherwise impeding the deposition. (*Id.* at 122:5-16). Plaintiff additionally complained that "[t]he defendant ha[d] extended pauses of silence between each question and yet the city attorneys [were attempting] to rush [Plaintiff] to the end of the deposition," and were additionally wasting time on objections. (*Id.* at 123:9-13).

Having heard from both parties, the Court ruled that the deposition could end. (Noto Dep. 124:17). However, the Court directed the parties to submit a transcript and any recording taken of the deposition for the Court's review so that the Court could determine whether the deposition should be continued. (*Id.* at 124:17-20).

At the conference held on March 25, 2016, Plaintiff requested an opportunity to brief a motion to continue Officer Noto's deposition, as well as a motion for sanctions. (*See* Dkt. #117, 123). Accordingly, the Court set a briefing schedule, and Plaintiff submitted his motions on May 13, 2016. (Dkt. #127, 128). Defendant filed his brief in opposition on June 10, 2016, in which he additionally moved for Plaintiff's submissions in support of his motions to be stricken from the record. (Dkt. #131).

3

## DISCUSSION

### A.    Applicable Law

Federal Rule of Civil Procedure 30(c)(2) states that objections at the time of a deposition "must be noted on the record," with testimony proceeding subject to any objections.  Such objections "must be stated concisely in a nonargumentative and nonsuggestive manner," and an attorney "may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  Fed. R. Civ. P. 30(c)(2).  Rule 30(d)(3) states, in turn, that "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."  Fed. R. Civ. P. 30(d)(3)(A).  Upon motion from an objecting party, the court may terminate a deposition or limit its scope by, for instance, "forbidding inquiry into certain matters," or "prescribing a discovery method other than the one selected by the party seeking discovery."  Fed. R. Civ. P. 30(d)(3)(B); Fed. R. Civ. P. 26(c)(1)(C)-(D).

Where the court grants a motion for an order compelling discovery due to a party's objections or failures to answer during deposition, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion."  Fed. R. Civ. P. 37(a)(5)(A).  But the court must not order this

payment, if, *inter alia*, "the opposing party's nondisclosure, response, or objection was substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii).

Finally, in addition to the authority conferred by Rule 37, courts possess the inherent power to impose sanctions on an attorney or party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Ransmeier* v. *Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (quoting *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). Courts may impose sanctions pursuant to their inherent authority "only upon a particularized showing of bad faith, which requires clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes." *Vaigasi* v. *Solow Mgmt. Corp.*, No. 11 Civ. 5088 (RMB) (HBP), 2016 WL 616386, at *19 (S.D.N.Y. Feb. 16, 2016) (internal alterations omitted) (quoting *Charles* v. *City of New York*, No. 11 Civ. 2783 (AT) (RLE), 2015 WL 756886, at *3 (S.D.N.Y. Feb. 20, 2015)).

## B.    Discussion

### 1.    Plaintiff's Application for Sanctions Is Denied

Officer Noto's deposition was terminated upon application from Defendant, on the basis that the deposition had devolved into harassment and personal attacks. (Noto Dep. 120:21-121:18). The Court granted Defendant's application upon the understanding, however, that the Court would review the record of the deposition to assess Defendant's characterization of that proceeding and determine whether continuing the deposition was warranted. (*Id.* at 124:17-20). Plaintiff asserts that sanctions are warranted for defense

counsel's repeated objections and interruptions, her coaching of the witness, Officer Noto's evasive answers, and false representations made by counsel in her application to terminate the deposition.  (*See generally* Pl. Br. Sanctions). Having now reviewed the transcript and the recording, the Court finds no basis for imposing sanctions on either Defendant or his counsel.

Contrary to Plaintiff's assertion that defense counsel misrepresented the record in making her application to terminate Officer Noto's deposition, the Court agrees with counsel's assertion that certain of Plaintiff's questions were unreasonable and unduly harassed the deponent.  The Court cites, by way of example, the following series of questions:

> Mr. Kennedy:  Did [Plaintiff] object to the forcing of your deviant, unwelcomed homosexual advances on him? (Noto Dep. 76:13-14).
>
> Mr. Kennedy:  Uh-huh and after he screamed and protested the forcing of your deviant, unwelcomed homosexual advances on him, what did you do?  (*Id.* at 76:18-19).
>
> Mr. Kennedy:  Have you ever heard of Nazi Germany? (*Id.* at 77:12).
>
> Mr. Kennedy:  Have you ever heard of concentration camps?  (*Id.* at 77:15).
>
> Mr. Kennedy:  Didn't somebody have to turn on the gas in the chamber in order to kill all of those Jews?  (*Id.* at 78:9-10).
>
> Mr. Kennedy:  Do you think the gas just turned on all by itself … that they had some kind of thinking gas chamber that just turned itself on or do you think a person did it?  (*Id.* at 79:7-9).
>
> Mr. Kennedy:  [] Have you heard of Amadou Diallo?  (*Id.* at 79:20).
>
> Mr. Kennedy:  Do you remember how many bullets were used to kill Mr. Diallo?  (*Id.* at 80:17).

> Mr. Kennedy: So police officers, as a matter of polic[y], are allowed to kill the civilians [they're] paid to protect and serve and they get away with it, don't [they]?  (*Id.* at 81:1-2).
>
> Mr. Kennedy:  Do you think that pumping 41 bullets into an innocent, unarmed black man is protecting and serving[?]  (*Id.* at 81:10-11).
>
> Mr. Kennedy:  …. Have you ever heard a fellow New York City Police Officer refer to an African-American person as a "savage"?  (*Id.* at 82:21-22).

While questions intended to elicit information regarding a party's racial bias may be appropriate, the claims in the instant matter do not implicate race; moreover, Plaintiff's questions appear calculated to accuse and harass rather than to gather information.  Similarly, Plaintiff's gratuitous characterization of Officer Noto's actions as "deviant, unwelcomed homosexual advances" could serve no purpose other than to embarrass or annoy; and his line of questioning regarding Nazi Germany is so plainly and egregiously inappropriate that the Court will not address it further.

Plaintiff argues that it is not for defense counsel — or, for that matter, the Court — to determine what constitutes relevant questioning during a deposition.  (Pl. Br. Reopen ¶¶ 5, 7(C)-(D), 7(F), 8(D)).  Plaintiff is correct insofar as objections based on relevance are not ripe for adjudication at deposition, but rather must be reserved for trial.  *Thompson* v. *Workmen's Circle Multicare Ctr.*, No. 11 Civ. 6885 (DAB) (HBP), 2015 WL 4591907, at *5 (S.D.N.Y. June 9, 2015).  However, the Court understands Defendant's objections to be based not merely on relevance, but rather on the fact that the questions were both inflammatory and so far afield as to constitute harassment of the witness.

7

(Noto Dep. 120:21-121:18; Def. Br. 3, 5, 7).  The Court agrees.  In short, given the manner in which Plaintiff conducted the deposition, Defendant's counsel was justified in warning that she would make, and in ultimately making, an application to terminate the proceeding.

In regard to defense counsel's objections during the deposition, which were indeed numerous, the Court is satisfied from the transcript that those objections primarily consisted of the single word "objection" and did not impede Plaintiff's ability to gather information.[2]  The record contains no indication that counsel coached the witness or suggested answers.  The Court does note that in a few instances, counsel was incorrect in instructing her client not to answer: Counsel's direction that Officer Noto not answer questions regarding his marital status and children, while purportedly based on the Court's ruling that Officer Noto need not answer questions regarding his sexual orientation, was an overly broad interpretation of that ruling.  (*See* Noto Dep. 7:24-8:25; Def. Br. 6).  Additionally, counsel's direction that Officer Noto not answer questions regarding Nazi Germany, while entirely understandable, should have been made in conjunction with an application under Rule 30(d) to terminate or limit the deposition, whereas here the questioning proceeded — albeit for a short period — before such an application was made.  (Noto Dep. 79:7-15).[3]

---

[2]     While the Court does not find that Plaintiff was in any way prejudiced by defense counsel's many one-word objections, it does note that defense counsel's frequent use of such objections bordered on excessive.

[3]     The Court acknowledges a third instance in which counsel directed her client not to answer questions, in response to a line of questioning regarding police "productivity goals" and Officer Noto's reason for retiring.  (Noto Dep. 118:21-119:12).  However, these instructions were given during the period in which the parties were actively

Imperfect adherence to Rule 30 does not necessarily indicate that an award of sanctions is appropriate. *See, e.g., Cameron Indus., Inc.* v. *Mothers Work, Inc.*, No. 06 Civ. 1999 (BSJ) (HBP), 2007 WL 1649856, at *5 (S.D.N.Y. June 6, 2007) (declining to impose sanctions, despite finding that "plaintiff's counsel volunteered information to the witness, made unnecessary, unjustified and unprofessional remarks concerning defendant's counsel, made unnecessary and suggestive speaking objections, improperly posed his own questions during defendant's direct examination instead of conducting cross-examination, contradicted the witness's testimony and issued instructions to the witness not to answer questions on the grounds of irrelevance").  Here, the record does not provide any evidence of bad faith on the part of defense counsel, and Plaintiff was not ultimately prejudiced in his ability to gather information pertinent to his claim.[4]  Furthermore, in light of the tenor of the deposition and counsel's ultimate application for termination, counsel's actions were substantially justified and accordingly do not warrant sanction.

Finally, in regard to Officer Noto's pauses, requests for clarification, and alleged evasiveness, the Court again finds no ground for sanctions.  Neither pausing to consider an answer, nor asking for clarification of a question, warrants sanction absent an indication that such conduct was employed in bad faith or in a manner that frustrated the deposing party's ability to conduct

---

seeking a Court ruling on Defendant's motion to terminate the deposition, and were consequently within the bounds of Rule 30(c)(2).

[4]    This latter point is particularly germane, in light of the Court's partial grant of Plaintiff's motion to reopen the deposition, discussed further in the text.

a fair examination.  *Cf. Karimona Investments, LLC* v. *Weinreb*, No. 02 Civ. 1792 (WHP) (THK), 2003 WL 1090318, at *1 (S.D.N.Y. Mar. 11, 2003) (imposing sanctions where deponent refused to answer any substantive questions, the refusal was not premised on the invocation of any privilege, and the deposition was consequently "a complete waste of time and money").  The record does not indicate any such behavior on the part of Officer Noto.

The Court does observe from the audio recording of the deposition that Plaintiff asked several questions in response to which Officer Noto remained silent for several moments, after which Plaintiff again asked a question; it is unclear from the audio and the transcript whether Officer Noto intended to answer the initial questions and was cut off by Plaintiff, or whether he was declining to answer.  Defense counsel should perhaps have, in these few instances, either directed her client to answer if he was able, or asked Plaintiff to clarify the question.  Defense counsel's failure to act during the relevant pauses did not, however, materially impede or delay the deposition so as to prevent Plaintiff from having a meaningful opportunity to examine Officer Noto.

In short, the Court finds no evidence in the record that either defense counsel or Officer Noto behaved so egregiously as to "impede[], delay[], or frustrate[] the fair examination of the deponent," nor that they acted in bad faith or for oppressive reasons.  Fed. R. Civ. P. 30(d)(2); *Ransmeier*, 718 F.3d at 68.  Plaintiff's motion for sanctions is therefore denied.

### 2.     Plaintiff May Submit a Limited Set of Further Questions for Officer Noto

Plaintiff contends that, due to Officer Noto's evasive answers, defense counsel's interruptions, and the premature termination of Officer Noto's deposition, Plaintiff was unable to acquire information from Officer Noto necessary to Plaintiff's case.  (Pl. Br. Reopen ¶¶ 2, 3, 6, 9).  Specifically, Plaintiff suggests that he has been prevented from asking questions bearing on Officer Noto's motivation and the training of police officers, and that he was unable to present Officer Noto with his prior affidavit so as to refresh Officer Noto's memory on certain points or reconcile perceived inconsistencies in his testimony.  (*Id.* at ¶¶ 7, 7(A)-(B), 11).  Regarding the latter, Plaintiff had the opportunity to present Officer Noto with his affidavit at the deposition and elected not to do so.  Regarding the former, Plaintiff similarly had the opportunity to ask questions pertaining to police motivation and training, but instead used his time during deposition to pursue questions steeped in inflammatory rhetoric, with no apparent connection to the facts of this case.

Nevertheless, the Court acknowledges that Plaintiff is proceeding *pro se* and is unfamiliar with the deposition process and the Federal Rules of Civil Procedure, and it is mindful of the need to afford him a full opportunity to prosecute his claims.  Plaintiff has represented to the Court that he has "18 unanswered questions" from Officer Noto's deposition, which the Court understands to be in addition to other questions that were not asked in the first instance.  (Pl. Br. Reopen ¶ 1).  The Court has no confidence, however, that a continuation of Officer Noto's deposition would proceed in a manner any

11

more productive than it did previously, nor can it be sure that Plaintiff will proceed in a manner that respects the deponent and the judicial process: Plaintiff's submission to the Court in support of his instant motion repeatedly compares both defense counsel and Officer Noto to the Nazi officers who operated the gas chambers at Auschwitz, mocks Officer Noto's education, and describes Officer Noto as a "terrorist coward" who is but one of multiple "fascist, terrorist thugs" and "demented, sadistic, government-sponsored gestapo attackers" employed by the New York City Police Department.  (Pl. Br. Reopen ¶¶ 5, 12, 12(C), 12(F), 14).

For these reasons, and because the record reflects that Plaintiff had a substantial opportunity to pose questions to Officer Noto at the previous deposition, Plaintiff may submit to the Court a list of no more than 30 questions that he would like Officer Noto to answer.  *See* Fed. R. Civ. P. 26(c)(1)(C) (allowing courts to prescribe a discovery method other than the one selected by the party seeking discovery); Fed. R. Civ. P. 30(c)(3) (permitting depositions by written question).  The Court will then consider any objections from Defendant regarding the proposed questions, will rule on any objections, and will direct Officer Noto answer as appropriate.  Proceeding on a limited set of written questions will allow Plaintiff to obtain additional information while preventing any undue harassment of the witness, and has the additional benefit of alleviating Plaintiff's stated concerns regarding time wasted by Officer Noto's pauses prior to providing answers, and Officer Noto's frequent requests that Plaintiff repeat questions.

### 3.    Defendant's Request to Strike Is Denied

Officer Noto's brief in opposition to Plaintiff's motions notes "several unwarranted *ad hominem* attacks" made against defense counsel in Plaintiff's briefs — including, most inappropriately, the repeated comparison of counsel to Nazi soldiers — and asks that the Court strike the submissions containing this abusive language.  (Def. Opp. 7).

While the Court acknowledges the broad power held by courts generally to impose sanctions, it is also sensitive to the fact that "[d]ue process imposes a limit on the power to impose sanctions, requiring that courts 'provide notice and opportunity to be heard before imposing *any* kind of sanctions.'" *O'Callaghan* v. *New York Stock Exch.*, No. 12 Civ. 7247 (AJN) (SN), 2013 WL 3984887, at *17 (S.D.N.Y. Aug. 2, 2013) (quoting *Schlaifer Nance & Co.* v. *Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) (emphasis in original)), *aff'd,* 563 F. App'x 11 (2d Cir. 2014) (summary order).  Plaintiff's *pro se* status does not provide him with free rein to harass, attack, or otherwise act in bad faith toward Defendants and their counsel.  *Arias-Zeballos* v. *Tan*, No. 06 Civ. 1268 (GEL), 2006 WL 3075528, at *4 (S.D.N.Y. Oct. 26, 2006) ("At a minimum, litigants, including *pro se* litigants, must refrain from excessive repetition and irrelevant, *ad hominem* attacks on their adversaries.").  Nevertheless, the Court has not previously issued a formal warning to Plaintiff, nor has it stated on the record that bad-faith conduct and abusive language — while clearly inappropriate — may additionally be grounds for sanctions.  It does so now.

Although the Court will not strike Plaintiff's submissions from the docket, it recognizes and understands defense counsel's concerns about the unsubstantiated and unwarranted personal attacks made in those documents. Consequently, the Court directs the Clerk of Court to designate Plaintiff's motion to continue Officer Noto's deposition and motion for sanctions such that they may be viewed by the Court and the parties only, and not the public.

## CONCLUSION

For the reasons stated in this Opinion, Plaintiff's motion for sanctions is DENIED; his motion to continue the deposition of Officer Noto is GRANTED IN PART; and Defendant's motion to strike is DENIED.  Plaintiff's list of 30 additional questions for Officer Noto will be due to the Court on **July 8, 2016**. Defendant's objections will be due on **July 15, 2016**.  The Clerk of Court is directed to designate docket entries 127 and 128 such that they are not publicly accessible, but rather are viewable only by the Court and the parties. The Clerk of Court is further directed to terminate the motions at docket entries 125, 127, and 128.

SO ORDERED.

Dated:      June 20, 2016
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this Order was mailed by Chambers to:*

```
Timothy John Kennedy
230 West 82nd Street
Apt. 1D
New York, NY 10024
```

14