UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

TIMOTHY JOHN KENNEDY,

        Plaintiff,

    v.

LIEUTENANT ANDREW ARIAS,
DETECTIVE JENNIFER O'CONNELL, and
POLICE OFFICER CHRISTOPHER NOTO,

        Defendants.

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 5, 2017____

12 Civ. 4166 (KPF)

<u>OPINION AND ORDER</u>

KATHERINE POLK FAILLA, District Judge[1]:

   Plaintiff Timothy John Kennedy alleges excessive force under 42 U.S.C.

§ 1983, as well as state-law assault and battery, against three current and

former officers of the New York City Police Department who were involved in

Plaintiff's arrest and related events on February 26, 2011. This Court

previously granted Defendants' motion to dismiss additional claims against

other individual defendants and the City of New York. (Dkt. #109). The Court

assumes familiarity with that Opinion and the facts described therein. The

three remaining individual defendants — Retired Police Officer Christopher

Noto, Detective Jennifer O'Connell, and Lieutenant Andrew Arias — have now

moved for summary judgment on all remaining claims pursuant to Rule 56 of

the Federal Rules of Civil Procedure. For the reasons set forth in the remainder

---

[1] Janelle Krummen, a rising second-year student at the University of Michigan Law
 School and an intern in my Chambers, provided substantial assistance in researching
 and drafting this Opinion.

of this Opinion, the Court grants Defendants' motion in part and denies it in part. Specifically, as to the excessive force claims, the Court denies the motion as to Defendants Noto and O'Connell and grants it as to Defendant Arias; and as to the state-law claims, the Court grants Defendants' motion in full.

## BACKGROUND[2]

### A. Factual Background

#### 1. Plaintiff's Arrest

On or about December 17, 2010, a complaining witness reported to a non-party police officer that she saw "an unknown male white, in his mid-forties, approx[imately] 5'10," slim build, dark hair, clean shaven, with very large, distinct eyes" kneeling near the rear driver's side of a vehicle, and that when she approached the man ran away and "she heard a hissing noise emanating from the rear [driver's] side door." (Def. 56.1 ¶ 9). A canvass of the area "revealed that a [male fitting] the listed description, [Plaintiff], reside[d] within the building" into which the perpetrator fled. (Def. Ex. J (Arrest Report)). Officer Christopher Noto, now retired, arrested Plaintiff on or about February 26, 2011, at approximately 7:30 p.m. on charges of Criminal Mischief in the Fourth Degree and Resisting Arrest (Def. 56.1 ¶¶ 10-11); of particular

---

[2]    The facts in this Opinion are drawn from the parties' submissions in connection with the motion for summary judgment, including Defendants' Local Rule 56.1 Statement ("Def. 56.1" (Dkt. #155)), and Plaintiff's opposition to this statement ("Pl. 56.1 Opp." (Dkt. #159)). Citations to a party's Rule 56.1 Statement incorporate by reference the documents cited therein. For convenience, Defendants' supporting memorandum of law will be referred to as "Def. Br." (Dkt. #156); Plaintiff's opposition submission as "Pl. Opp." (Dkt. #159); Defendants' reply memorandum as "Def. Reply" (Dkt. #163); and Plaintiff's letter response to Defendants' reply argument to strike certain of Plaintiff's supporting evidence as "Pl. Letter" (Dkt. #164).

relevance to the instant motion, Plaintiff denies having resisted (Pl. 56.1 Opp. ¶ 1). Detective Jennifer O'Connell, then Jennifer Longo, was Officer Noto's assigned partner on February 26, 2011, and thus was also present for Plaintiff's arrest. (Def. 56.1 ¶ 12).

Plaintiff alleges that during his arrest, he was "attacked from behind, knocked to the ground, and his face was repeatedly bashed into the sidewalk" (Second Amended Complaint, "SAC," ¶ 2 (Dkt. #63)), and that Officer Noto "grabbed his crotch" two times (*id.* at ¶ 4). Plaintiff cannot "visually identify" his assailants. (Pl. 56.1 Opp. ¶ 9). He does not remember seeing a female officer (Def. 56.1 ¶ 26), but "may have heard a female voice" (Pl. 56.1 Opp. ¶ 10; Def. Ex. P (Kennedy Dep.) at 52:5-6). Plaintiff claims to have lost consciousness sometime after being placed into a vehicle at the scene of his arrest (Def. 56.1 ¶ 27), but has some recollection of later events (Pl. 56.1 Opp. ¶ 11).

After his arrest, Plaintiff was transported to the 20th Precinct. (Def. 56.1 ¶ 13). Plaintiff alleges that, while at the stationhouse, "someone representing himself as a sergeant, was digging something into his [chest saying,] 'Talk to me, Mr. Kennedy. If you don't talk to me, I'm going to keep doing this all night.'" (SAC ¶ 7). Lieutenant Andrew Arias was the desk sergeant on duty at the 20th Precinct on the evening of February 26, 2011. (Def. 56.1 ¶ 15). Plaintiff did not see the person who allegedly dug an object into his chest, possibly because he was in and out of consciousness. (Pl. 56.1 Opp. ¶ 8). Emergency Medical Technicians were called at approximately 7:43 p.m. and

arrived at the 20th Precinct at approximately 7:55 p.m. (Def. 56.1 ¶ 14). Plaintiff was then transported to St. Luke's Roosevelt Hospital at approximately 8:03 p.m. (*Id.* at ¶ 16).

### 2. Plaintiff's Injuries

Plaintiff was admitted to St. Luke's Roosevelt Hospital and intubated for airway protection following a period of unresponsiveness. (Def. 56.1 ¶ 17). While there, a series of head trauma etiologies came back negative. (*Id.*). Defendants acknowledge that on February 26, 2011, after physical examinations, Plaintiff was found to have a "small abrasion to the right eye, small right facial forehead abrasion, and bruising over the right zygomatic area and right eyebrow[.]" (*Id.* at ¶ 18). Plaintiff objects to Defendants' "partial list," which he considers an attempt to "trivialize" his injuries. (Pl. 56.1 Opp. ¶ 4). The additional injuries that Plaintiff lists, for which there is supporting evidence in the record, are: (i) a three-centimeter abrasion to the upper sternum (Pl. Ex. C, Dkt. #159-5, at 37);[3] (ii) disc protrusion at C4-C5 (Dkt. #159-6, at 10; Dkt. #159-5, at 13-14); and (iii) complaints of an eye injury with vision impairment (Dkt. #159-5, at 3). Plaintiff also claims Post-Traumatic Stress Disorder ("PTSD") attributable to the incident. (Pl. 56.1 Opp. ¶ 4; Def. Ex. R, at DC000096-97). Somewhat curiously, Defendants make no argument that these other injuries existed prior to Plaintiff's arrest. In fact, they wholly fail to address these injuries in their briefing.

---

[3]     The medical records submitted by Plaintiff in opposition to this motion are sufficiently voluminous that they span various ECF entries in the Court's docket.

Plaintiff was eventually diagnosed with a factitious coma and discharged from St. Luke's Roosevelt Hospital on March 3, 2011.  (Def. 56.1 ¶ 19; Def. Ex. R, at D000091).

### 3.    Plaintiff's Prosecution and Conviction

Following a criminal trial before Justice Thomas Farber of the Supreme Court of New York, New York County, Plaintiff was convicted of Attempted Criminal Mischief in the Fourth Degree on December 17, 2012.  (Def. 56.1 ¶ 23; Pl. Ex. K (Trial Transcript)).[4]  He was sentenced to a conditional discharge with restitution and ten days of community service.  (Pl. Ex. K, Dkt. #159-22, at 28).

### B.    Procedural Background

### 1.    Original Pleadings and Defendants' Motion to Dismiss

Plaintiff filed a Notice of Claim against the City of New York on or about May 27, 2011.  (Def. 56.1 ¶ 20; Def. Ex. S (Notice of Claim)).  The Notice of Claim listed Jason A. Steinberger as Plaintiff's attorney.  (Def. 56.1 ¶ 21; Def. Ex. S).  Notice of a hearing under New York General Municipal Law § 50-h (the "50-h Hearing") was mailed to Steinberger on June 20, 2011.  (Def. Ex. T (Notice of 50-h Hearing); Def. Ex. X ¶ 8 (Decl. of Michael Harary)).  Plaintiff and his counsel did not appear for the 50-h Hearing or request an adjournment.  (Def. 56.1 ¶ 22).  Plaintiff states that he did not receive notice of the 50-h Hearing.  (Pl. 56.1 Opp. ¶ 6).

---

[4]    Plaintiff's Exhibit K, the transcript of his criminal trial, is also sufficiently voluminous to require several ECF docket entries.

Plaintiff filed his original *pro se* complaint in this matter on May 24, 2012, naming the City of New York, seven John Doe police officers, and one civilian Jane Doe as defendants. (Dkt. #2). On November 27, 2013, Kennedy filed his First Amended Complaint (Dkt. #29), and finally, on August 11, 2014, he filed his Second Amended Complaint — the operative complaint in this litigation. (Dkt. #63). The City filed its Answer on August 21, 2014. (Dkt. #64). On March 5, 2015, the City and Individual Defendants Arias, Bast, Clifford, Conde, and Gbonoi jointly filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(c) and 12(b)(6). (Dkt. #99-100).

In its October 23, 2015 Opinion and Order, this Court dismissed Plaintiff's claim against the City for failure to instruct, supervise, and control under 42 U.S.C. § 1983; his claims against the moving Individual Defendants for false arrest, false imprisonment, malicious prosecution, and defamation under both New York law and § 1983; deliberate indifference, unlawful search and seizure, and deprivation of property under § 1983; and his claim for intentional infliction of emotional distress under New York law. *Kennedy* v. *City of New York*, No. 12 Civ. 4166 (KPF), 2015 WL 6442237, at *18 (S.D.N.Y. Oct. 23, 2015). The Court denied Defendants' motion to dismiss Plaintiff's claims of excessive force, assault, and battery against Defendant Arias. (*Id.*). As Defendants Noto and O'Connell had not moved to dismiss, these same three claims remain as to them. (*Id.*).

### 2.     Medical Record Discovery Disputes

On May 16, 2016, Defendants requested a four-month extension of the deadline for fact discovery in this case. (Dkt. #129). In its Endorsement issued the same day, the Court granted the request, but noted that "[n]o further extensions will be granted" because the additional four-month period "strikes the Court as likely longer than necessary[.]" (Dkt. #130). Then on September 21, 2016, Defendants submitted a letter requesting a further two-month extension for fact discovery. (Dkt. #141). Discovery was scheduled to conclude on September 27, 2016, but was stayed by the Court's endorsement of that same date. (*Id.*). After an October 18, 2016 conference — having considered the submissions of the parties (Dkt. #141-42), and spoken with each — the Court denied the defense application in its October 21, 2016 Order (Dkt. #143).

The Court denied the extension application in part because it was not convinced that Defendants had acted with sufficient diligence to obtain the medical records at issue. (Dkt. #143). However, because several requests for documents to various medical treatment facilities had gone unanswered, the Court allowed a brief window of time for Defendants to receive materials from those providers, with the conditions that they be received from the providers and produced to Plaintiff by November 4, 2016. (*Id.*). Regarding Plaintiff's objections to any extension of the discovery period, the Court observed that Plaintiff's own failure to produce substantiating medical records "may restrict him to seeking only 'garden variety' emotional distress damages. (*Id.* (citing

*Olsen* v. *Cty. of Nassau*, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009))).  Discovery

was thus concluded.  (*Id.*).

### 3.     The Instant Motion for Summary Judgment

On January 6 and 7, 2017, Defendants filed their motion for summary

judgment and supporting documentation.  (Dkt. #152-156).  On February 17,

2017, Plaintiff requested an extension of time to respond to Defendants'

motion, which request was granted.  (Dkt. #158).  On February 21, 2017,

Plaintiff filed his opposition brief and materials (Dkt. #159), including

supplemental medical records.  Defendants requested an extension of time to

reply on March 1, 2017 (Dkt. #160), which request was also granted (Dkt.

#161).  On March 20, 2017, Defendants filed a second Declaration in Support

of their motion and a Reply Memorandum of Law, arguing that the

supplemental medical records ought not be considered.  (Dkt. #162-163).  And

finally, on April 4, 2017, Plaintiff filed a letter in response to Defendants'

preclusion of medical records argument.  (Dkt. #164).

### DISCUSSION

## A.     Preliminary Matters

### 1.     The Court Will Consider Plaintiff's Local Civil Rule 56.1 Opposition Statement

The Local Civil Rules of the United States District Courts for the

Southern and Eastern Districts of New York apply to this lawsuit.  In

compliance with Local Civil Rules 56.1(a) and 56.2, Defendants included with

their motion papers a Statement of Material Facts "as to which they contend

there is no genuine issue to be tried" as well as the appropriate Notice to Pro Se

Litigants.  (Dkt. #155, 153).  *See* L. Civ. R. 56.1(a), 56.2.  In their Reply, Defendants contend that Plaintiff has not complied with his concomitant obligations under the Local Rules and, thus, that his Opposition ought to be disregarded and Defendants' 56.1 Statement deemed admitted for purposes of this motion.  (Def. Reply 7).

Local Rule 56.1 requires that "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbers paragraph in the statement of the moving party," L. Civ. R. 56.1(b), and that each statement "be followed by a citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)," L. Civ. R. 56.1(d).  The rule further provides that "[e]ach numbered paragraph in the statement of material facts ... will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  L. Civ. R. 56.1(c).

It is true that Plaintiff's Opposition is not in strict compliance with Local Rule 56.1.  It does, however, present a series of factual assertions and arguments.  It also names specific paragraphs of Defendants' 56.1 Statement to which it responds.  "[W]here a *pro se* plaintiff fails to submit a proper [opposing statement] ..., the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions."  *Wali* v. *One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (citations omitted); *accord Diagne* v. *N.Y. Life Ins. Co.*, No. 09 Civ. 5157

(GBD) (GWG), 2010 WL 5625829, at *1 (S.D.N.Y. Dec 8, 2010), *report and recommendation adopted*, 2011 WL 204905, at *1 (S.D.N.Y. Jan. 21, 2011). Accordingly, the Court will exercise its discretion to (i) consider the materials submitted by Plaintiff and (ii) deem admitted those portions of Defendants' 56.1 Statement that are not controverted by any other evidence in the record. *See Chambliss* v. *Rosini*, 808 F. Supp. 2d 658, 662 (S.D.N.Y. 2011) (exercising discretion to consider a sworn declaration containing factual assertions and the plaintiff's deposition testimony where plaintiff failed to submit a proper Rule 56.1 statement).

### 2. The Court Will Not Consider Plaintiff's Supplemental Medical Records

The Court previously heard each party's arguments regarding Defendants' request for an additional two-month extension on fact discovery at the October 18, 2016 conference. (*See* Dkt. #149 (transcript)). Of particular importance to this motion was a discussion of medical records Defendants had requested, but not yet received, from three medical service providers: the Spencer Cox Center for Health ("Spencer Cox"), the Crime Victims Treatment Center ("CVTC"), and the Mindfulness Based Stress Reduction Program ("MBSR"). At the time of the conference, Defendants had not obtained medical records from Spencer Cox because of that provider's concern about Plaintiff's release form, of which Defendants were made aware sometime in August 2016. (*Id.* at 4-6). Defense counsel contacted Spencer Cox on September 19, 2016, but had not yet heard back from the provider at the time of the conference. (*Id.*

at 6).  A request and follow-up communication had also been sent to each of MBSR and CVTC, but no responses were received.  (*Id.* at 8-9).  At the conference, Plaintiff indicated his desire "to proceed along" because "this case has gone on now for years" and "[i]t was [his] understanding that this was a final deadline."  (*Id.* at 23:14-19).

In its October 21, 2016 Order, the Court warned Plaintiff that failure to produce supporting medical records could be mutually disadvantageous for both sides.  (Dkt. #143).  However, in his opposition to the instant motion, Plaintiff included heretofore-undisclosed medical records obtained from CVTC, MBSR, and Spencer Cox.  (*See* Pl. Opp., Ex. F, O, P).  Defendants argue in their Reply that Plaintiff ought to be precluded from using medical records from these three providers on timeliness grounds.  (*See* Def. Reply 9).  In his April 4, 2017 letter to the Court, Plaintiff contends that he ought not be "penalize[d]" for Defendants' failure to procure the relevant records in a timely fashion and that he "submitted those records as soon as they were secured[.]"  (*See* Pl. Letter).

Before analyzing this issue, it is worth commenting on the contents of the supplemental medical records.  The records from CVTC indicate that Plaintiff received regular acupuncture treatment from 2009 to the beginning of 2013, and then again briefly in 2014.  (Pl. Ex. F).  There are no notes provided concerning the reasons for the treatment, or any changes in treatment necessitated (or not) by the events surrounding Plaintiff's arrest in February 2011.  The "Certificate of Attendance" from MBSR is dated "Spring 2016," five

years after the incident in question, and gives no indication of the reason Plaintiff attended the stress reduction class. (Pl. Ex. O).

The medical records from Spencer Cox are much more informative. Beginning on March 9, 2011, the records show that Plaintiff came to Spencer Cox requesting acupuncture for pain, fatigue, stress management, disturbed sleep, and recurrent nightmares following a recent "assault by police officers." (Pl. Ex. P at 03/09/11 Rimel Note). The pain occurred in Plaintiff's neck and back. (*Id.* at 03/14/11 Panken Note). It appears that similar complaints and regular treatments continued at Spencer Cox through February 23, 2015. (*See generally id.* at 02/23/2015 Lo Note). Around that time, the heading on the records switched to Mount Sinai St. Luke's, but the personnel, complaints, and treatments remain substantially the same. (*See generally id.*). Finally, on January 27, 2017, three weeks after Defendants filed the present motion, the final note states, "[Patient] stated that he needs assistance with printing his medical records. PC assisted [patient] with printing his acupuncture records." (*Id.* at 1/27/17 Bowen Note).

To comply with the Federal Rules of Civil Procedure, "a party must … provide to the other parties … a copy … of all documents … that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses[.]" Fed. R. Civ. P. 26(a)(1)(A)(ii). And "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) …, the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified

12

or is harmless." Fed. R. Civ. P. 37(c)(1). "The purpose of the rule is to prevent the practice of sandbagging an opposing party with new evidence." *Haas* v. *Del. & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008) (summary order) (quoting *Ebewo* v. *Martinez,* 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004)) (internal quotation marks omitted).

When considering if evidence ought to be precluded pursuant to Rule 37, the Second Circuit weighs the four *Patterson* factors: (i) the party's explanation for its failure to comply, (ii) the importance of the testimony of the precluded witnesses or of the evidence, (iii) any prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony or evidence, and (iv) the possibility of a continuance. *Patterson* v. *Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006); *see also Design Strategy, Inc.* v. *Davis*, 469 F.3d 284, 296 (2d Cir. 2006). Neither party makes arguments expressly relating to these factors in their submissions. (*See generally* Def. Reply; Pl. Letter). The Court undertakes this analysis gleaning what it can from the relevant submissions.

The first factor is the party's explanation for failure to comply with discovery deadlines. Plaintiff provides no such explanation. In fact, in his letter of April 4, 2017, Plaintiff fails to acknowledge that discovery deadlines applied to him as well as Defendants, despite this Court's previous efforts to caution him that failure to produce medical records could have negative consequences for both parties. Instead, he emphasizes the "lack of due diligence" on the part of Defendants "to obtain those records prior to the Court's final deadline[,]" requiring him "to exercise the necessary due diligence

13

to obtain" those records. (Pl. Letter). For the Spencer Cox records, this "due diligence" on the part of Plaintiff apparently involved only a quick request for records during an acupuncture appointment. (Pl. Ex. P at 1/27/17 Bowen Note).

Accusing the opposing party of similar conduct is not a persuasive explanation. *See Serin* v. *Northern Leasing Sys., Inc.*, No. 06 Civ. 1625 (JSG), 2010 WL 6501661, at *2 (S.D.N.Y. Oct. 26, 2010). Plaintiff provides no explanation for why he failed to secure and produce these documents prior to the deadline. His failure to address these issues or accept responsibility for untimely production, and his previous withholding of consent to the two-month discovery extension addressed at the October 18, 2016 conference, leave the Court dissatisfied with Plaintiff's explanation. This factor therefore weighs in favor of preclusion of the evidence.

The second factor is not addressed by Defendants in their Reply, but Plaintiff argues to the Court that these records are "invaluable" to his case. (Pl. Letter). The Court cannot agree that the CVTC or MBSR records are "invaluable" because they have no reference or obvious relationship to the February 26, 2011 incident. The Spencer Cox records do appear to be potentially relevant to Plaintiff's claims and to the issue of damages. However, it must be noted that this is the kind of risk of which Plaintiff was warned — that his failure to produce substantiating medical records himself "may restrict him to seeking only 'garden variety' emotional distress damages." (Dkt. #143 (citing *Olsen*, 615 F. Supp. 2d at 46)). As it relates to the Spencer Cox records

only, the second factor weighs against preclusion because they show recurrent neck and back pain, loss of sleep and nightmares, and regular acupuncture treatment ostensibly related to these injuries.  (Pl. Ex. P).[5]

Regarding the third factor, Defendants state in their Reply that Plaintiff's "failure to produce [the medical records] was not justified or harmless, especially in light of the fact that they were apparently readily obtained and produced after Defendants spent more than four years litigating this action, and already served their motion for summary judgment[.]" (Def. Reply 9).  The Court agrees that the gamesmanship in which Plaintiff engaged — withholding consent to a discovery extension that was requested specifically for the purpose of procuring the very documents that Plaintiff now produces — is not harmless. Additionally, all parties to this litigation have expressed a desire to see this lengthy litigation proceed to resolution.  The third factor thus weighs in favor of preclusion.  *See Pal* v. *New York University*, No. 06 Civ. 5892 (PAC) (FM), 2008 WL 2627614, at *5 (S.D.N.Y. June 30, 2008) (finding prejudice where discovery was closed, a pretrial conference to discuss defendant's proposed motion for summary judgment had been scheduled, and the litigation had been pending for two years).

The fourth factor is the possibility of a continuance.  As detailed above, an extension to discovery has already been granted in this case.  After granting

---

[5]     As the summary judgment analysis below will reveal, even the Spencer Cox medical records, though perhaps relevant to bolster claims of excessive force, would not change the Court's analysis on this motion.  Summary judgment is granted as to certain of Plaintiff's claims of excessive force and all of his claims of assault and battery on grounds entirely unrelated to the nature or extent of his injuries.

the four-month extension, the Court warned that "[n]o further extensions will be granted" because the additional four months "strikes the Court as likely longer than necessary[.]" (Dkt. #130). The Court denied the application for an additional two-month extension in its October 21, 2016 Order because (i) it was not persuaded that Defendants had exercised the requisite diligence in procuring the medical records and (ii) Plaintiff did not consent to an extension. (Dkt. #143). Plaintiff has failed to justify his failure to procure the records at an earlier date and the Court therefore doubts his own diligence as well. Therefore, the fourth factor also weighs in favor of preclusion. *See Serin,* 2010 WL 6501661, at *2 ("The Court will entertain no more requests for a continuance, particularly since the parties both have made a habit of delaying and impeding discovery.").

Accordingly, although the Spencer Cox medical records may be relevant to Plaintiff's claims and potential damages (a risk of which he was warned), three of the four *Patterson* factors weigh in favor of preclusion, and Plaintiff's supplemental medical records from CVTC, Spencer Cox, and MBSR will not be considered for purposes of this motion. *See Spotnana, Inc.* v. *Am. Talent Agency, Inc.*, No. 09 Civ. 3698 (LAP), 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010) (finding the other three factors outweighed "the importance of [defendant's] damages evidence, even though [defendant] may be denied any recovery as a result, because [defendant] has disregarded its discovery obligations without any explanation at all").

**B. Motions for Summary Judgment Under Rule 56**

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986) (internal citation and quotation marks omitted); *see also Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation and alterations omitted).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the

movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). In a *pro se* case, the Court must go one step further and liberally construe the party's pleadings "to raise the strongest arguments that they suggest." *McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Nonetheless, a *pro se* litigant must still be held to the normal requirements of summary judgment, and "bald assertion[s], [] unsupported by evidence," will not overcome a motion for summary judgment. *Carey* v. *Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Stinson* v. *Sheriff's Department*, 499 F. Supp. 259, 262 (S.D.N.Y. 1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended"). Litigants "should be on notice from the very publication of Rule 56(e) that a party faced with a summary judgment motion may not rest upon the mere allegations or denials of the party's pleading and that if the party does not respond properly, summary judgment, if appropriate, shall be entered against him." *Champion* v. *Artuz*, 76 F.3d 483, 485 (2d Cir. 1996) (quoting *Graham* v. *Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (internal quotation marks omitted)). A nonmoving plaintiff "may not reply upon conclusory allegations or denials, but instead must produce evidence in admissible form, setting forth 'concrete particulars' showing that a trial is needed." *Yevstifeev* v. *Steve*, 860 F. Supp. 2d 217, 220 (W.D.N.Y. 2012) (quoting *R.G. Group, Inc.* v. *Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir. 1984)).

**C.     Defendants' Motion for Summary Judgment Is Denied in Part and Granted in Part**

For the reasons stated herein, summary judgment is denied as to claims of excessive force against Defendants Noto and O'Connell; granted as to claims of excessive force against Defendant Arias; and granted as to the state-law claims of assault and battery against all three Defendants.

**1.     Section 1983 Claims for Excessive Force**[6]

**a.     Applicable Law**

Section 1983 provides a remedy when a state actor deprives a plaintiff of federally protected rights.  An actionable § 1983 claim requires the plaintiff to show (i) a violation of a right, privilege, or immunity protected by the Constitution or laws of the United States, and (ii) that the actor was under the color of state law.  *See Cruz* v. *City of New York*, No. 15 Civ. 2265 (PAE), 2017 WL 544588, at *7 (S.D.N.Y. Feb. 8, 2017) (citing *West* v. *Atkins*, 487 U.S. 42, 48 (1988); *Flagg Bros., Inc.* v. *Brooks*, 436 U.S. 149, 155-56 (1978)).

A use of force violates the Fourth Amendment if the police officer's conduct is "objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent of motivation.'"  *Id.* at *7 (quoting *Maxwell* v. *City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (internal quotation omitted)).  The analysis involves "a careful balancing of the

---

[6]     Defendants' "POINT II" in their brief argues that Plaintiff failed to allege a viable claim of excessive force based on tight handcuffing because he did not produce credible evidence that the handcuffs were unreasonably tight.  (Dkt. #156).  In response, Plaintiff wrote, "Regarding POINT II…, it is non-applicable to the present litigation, therefore moot." (Pl. Opp. ¶ 16).  Accordingly, the Court will deem any claims of excessive force related to handcuffing to be abandoned.

nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Figueroa* v. *Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (quoting *Graham* v. *Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted)). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. 386 at 396. "[I]t is … well established that '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Mesa* v. *City of New York*, No. 09 Civ. 10464 (JPO), 2013 WL 31002, at *18 (S.D.N.Y. Jan 3, 2013) (quoting *Johnson* v. *Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

In addition to use of excessive force, a plaintiff must also establish the personal involvement of each defendant. *See Cruz*, 2017 WL 544588, at *8 (citing *Celestin* v. *City of New York*, 581 F. Supp. 2d 420, 428-29 (E.D.N.Y. 2008)) (citation omitted); *see also Warheit* v. *City of New York*, 271 F. App'x 123, 126 (2d Cir. 2008) (summary order) ("It is well settled in [the Second] Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). An officer is sufficiently personally involved if he or she "either [i] directly participates in an assault, or [ii] is present during the assault, and fails to intercede on behalf of the victim even though he [or she] had a reasonable opportunity to do so." *Frederique* v. *Cty. of Nassau*, 168 F. Supp. 3d 455, 471 (E.D.N.Y. 2016) (quoting *Tieman* v. *City of Newburgh*, No. 13

Civ. 4178 (KMK), 2015 WL 1379652, at *25 (S.D.N.Y. Mar. 26, 2015) (internal quotation marks omitted)).

Defendants argue that they are entitled to summary judgment on each of Plaintiff's excessive force claims because "he has not produced objective evidence to support such claims." (Def. Br. 9). In particular, they argue that the relevant medical records contradict Plaintiff's allegations because his injuries do not indicate excessive use of force. (*Id.* at 12). Additionally, Defendants argue that Plaintiff has not established the personal involvement of Defendants O'Connell or Arias. (*Id.* at 15). The Court will address each of these arguments in turn below.

> **b.** **Summary Judgment Is Denied as to Plaintiff's Excessive Force Claim Against Defendant Noto**

The Court is not persuaded that Plaintiff has failed to provide objective evidence to support his claims of excessive force. The medical records from St. Luke's Roosevelt Hospital indicate various facial bruises and abrasions, the existence of which Defendants do not refute. (Def. 56.1 ¶ 18). Additionally, Plaintiff's medical records disclose a three-centimeter abrasion on his upper sternum and disc protrusion at C4-C5. (Pl. Ex. C, Dkt. #159-5, at 37; Dkt. #159-6, at 10; Dkt. #159-5, at 13-14). And an appointment shortly after the February 26, 2011 incident indicates complaints of vision impairment. (Def. Ex. R, at D000143). Defendants failed to acknowledge the existence of these other injuries in their submissions. In any event, there is no evidence in the record suggesting that these injuries were pre-existing.

There is no dispute that Defendant Noto was present at the time of Plaintiff's arrest on February 26, 2011. There also is no dispute that Noto "grabbed [Plaintiff] from the back … and brought him down to the ground." (Def. Ex. L (Noto Dep.) at 34:23-24). Therefore, Defendant Noto's personal involvement is not at issue. What is disputed is whether Plaintiff resisted arrest and what transpired between the two thereafter. Plaintiff, for his part, claims that his head was repeatedly "bashed" against the sidewalk. Defendants understandably do not agree with this account.

To support their argument for summary judgment, Defendants cite to the Second Circuit's decision in *Jeffreys*, which held that where "plaintiff relies almost exclusively on his own testimony," a district court does not err in granting summary judgment where the testimony of that sole witness is "unsubstantiated by any other direct evidence… [and is] 'so replete with inconsistencies and improbabilities' that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the plaintiff's complaint." *Jeffreys* v. *City of New* York, 426 F.3d 549, 554-55 (2d Cir. 2005) (quoting *Jeffreys* v. *Rossi*, 275 F. Supp. 463, 475 (S.D.N.Y. 2003)). In that case, the plaintiff alleged that he had been hit on the head with a flashlight and thrown out a window by police, though there was no evidence of external injury on his head and he had admitted on three previous occasions to jumping from the window. *Id.* at 552-53. The same inconsistencies do not exist in this case. Plaintiff's facial bruising and abrasions, disc protrusion, and complaints of vision impairment all tend to corroborate his allegation that his

head was "bashed" against the sidewalk. Furthermore, Plaintiff's accounts of the arrest have been consistent. Absent any other explanation for his injuries, and bearing in mind Plaintiff's status as a *pro se* litigant, the Court cannot agree with Defendants that, as a matter of law, the medical records "directly and irrefutably contradict" Plaintiff's allegations, such that "no reasonable jury could credit [his] account of the happening." *Davis* v. *Klein*, No. 11 Civ. 4868 (ENV), 2013 WL 5780475, at *4 (E.D.N.Y. Oct. 25, 2013) (citing *Bove* v. *City of New York*, No. 98 Civ. 8800 (HB), 1999 WL 595620, at *6 (S.D.N.Y. Aug. 6, 1999)).

Plaintiff's injuries also appear to be sufficiently serious to survive summary judgment. Plaintiff has alleged more than mere bruising, and "even where the only physical injuries alleged are bruises, if they are sustained following an unjustified use of force, the claims of excessive use of force will survive a summary judgment motion." *Jie Yin* v. *NFTA*, 188 F. Supp. 3d 259, 269 (W.D.N.Y. 2016); *see also Hayes* v. *N.Y.C. Police Dept.*, 212 F. App'x 60, 62 (2d Cir. 2007) (summary order) ("[W]e have permitted claims to survive summary judgment where the only injury alleged is bruising."); *Maxwell* v. *City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) ("[W]e have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising."). There is a genuine dispute as to the amount of force used at the time of Plaintiff's arrest and whether or not it was proper under the circumstances. Furthermore, Defendant Noto's personal

involvement is not contested.  For these reasons, Defendants' motion as to the excessive force claims against Defendant Noto is denied.

> ### c.    Summary Judgment Is Denied as to Plaintiff's Excessive Force Claim Against Defendant O'Connell

There is no dispute that Detective O'Connell was present at the time of Plaintiff's arrest.  (Def. 56.1 ¶ 12).  Plaintiff also may have heard a female voice during his arrest.  (Pl. 56.1 Opp. ¶ 10).  However, Defendants point out in their Rule 56.1 Statement that Plaintiff does not recall seeing a female officer on the evening of February 26, 2011, at the time of his arrest. (Def. 56.1 ¶ 26).  From this, Defendants argue that Plaintiff cannot establish O'Connell's personal involvement in the alleged use of excessive force.  (Def. Br. 16).

Whether or not Detective O'Connell was involved in bringing Plaintiff down to the ground is unclear from her deposition testimony.  At one point, O'Connell testified that she was "not sure if [Plaintiff] fell or if Officer [Noto] took [him] to the ground.  I don't recall exactly."  (Def. Ex. K (O'Connell Dep.) at 15:1-2).  However, moments later when asked who was involved in bringing Plaintiff to the ground, Detective O'Connell responded, "How we wound up on the ground was just Officer [Noto] and I."  (*Id.* at 15:16).  No matter how the takedown occurred, Detective O'Connell testified that at some point during the arrest "Officer [Noto] and I were on the ground trying to get … [Plaintiff's] arms out" from underneath him.  (*Id.* at 14:19-23).

"A plaintiff seeking to prove that an officer directly participated in the alleged excessive force need not be able to positively identify … which defendant took what particular action."  *Betts* v. *Rodriguez*, 15 Civ. 3836 (JPO),

2017 WL 2124443, at *3 (S.D.N.Y. May 15, 2017) (citing *Gonzalez* v. *Waterbury Police Dep't.*, 199 F. Supp. 3d 616, 621 (D. Conn. 2016) (internal quotation marks omitted)).  The Court cannot say, viewing the evidence in the light most favorable to the Plaintiff, that no reasonable juror could find Defendant O'Connell's direct participation in the alleged conduct.  *Cf. Dockery* v. *Tucker*, No. 97 Civ. 3584 (ARR) (RLM), 2006 WL 5893295, at *14 (E.D.N.Y. Sept. 6, 2006) ("[e]ven accepting [the officer's] contention that his role in the search was secondary to that of the NYPD and Agent Alston, his admitted participation in the FBI Task Force and his descriptions at trial of the acts at the scene [were] sufficient evidence upon which a reasonable juror could conclude that Tucker was personally involved, even if indirectly, in the search that is the subject of plaintiff's claims").

Accordingly, even if Defendant O'Connell's role in the arrest were secondary to that of Defendant Noto, given her presence at the time of arrest and admitted physical contact with Plaintiff, there is sufficient evidence of O'Connell's personal involvement in Plaintiff's arrest to survive summary judgment.  For these reasons and for those listed above regarding medical records and evidence supporting Plaintiff's claim of an excessive use of force, Defendants' motion for summary judgment for § 1983 claims of excessive force against Defendant O'Connell is denied.

### d. Summary Judgment Is Granted as to Plaintiff's Excessive Force Claim Against Defendant Arias

Plaintiff alleges that while at the 20th Precinct on the evening of February 26, 2011, "someone representing himself as a sergeant, was digging

something into his chest [and saying,] 'Talk to me, Mr. Kennedy. If you don't talk to me, I'm going to keep doing this all night.'" (SAC ¶ 7). It is undisputed that Defendant Arias was the desk sergeant on duty at the 20th Precinct on the evening of February 26, 2011. (Def. 56.1 ¶ 15). And certainly, the three-centimeter abrasion on Plaintiff's sternum would tend to corroborate his allegation that someone dug an object into his chest. (Pl. Ex. C, Dkt. #159-5, at 37). However, Plaintiff did not see the person who allegedly dug an object into his chest. (Pl. 56.1 Opp. ¶ 8). The Court acknowledges that Plaintiff did not see Defendants Noto or O'Connell during his arrest either. However, as detailed herein, Plaintiff's allegations as to each are qualitatively different, such that summary judgment as to Defendant Arias is warranted.

First, physical contact has been established on the record between Defendants Noto and O'Connell and Plaintiff — either in uncontested Statements of Fact (*e.g.*, Def. 56.1 ¶ 11), or testimonial admissions (*e.g.*, Def. Ex. K (O'Connell Dep.) at 14:19-23). The same cannot be said of Defendant Arias. Arias recalls seeing Plaintiff standing in front of his precinct desk on February 26, 2011, and then falling down. (Def. Ex. O (Arias Dep.) at 7:3-16). Arias testified that he then instructed other officers to "check on Plaintiff's well-being" and call an ambulance. (*Id.* at 8:7, 16:15-17). Plaintiff testified that he had never seen Defendant Arias, but rather was provided his name by the City. (Def. Ex. P (Kennedy Dep.) at 85:17-20, 85:24-86:4). Regarding the information provided, Plaintiff said, "I have no way of verifying that … I don't know whether it's true or not." (*Id.* at 86:2-4). No physical contact between Defendant Arias

26

and Plaintiff has been established on the record. Additionally, at the time of Plaintiff's arrest, Defendants Noto and O'Connell were the only police officers present. The same cannot be said regarding Lieutenant Arias at the 20th Precinct, where various police officers were present during the relevant time period.

Plaintiff asserts that the contemporaneous title of "sergeant" and Defendant Arias's physical presence in the 20th Precinct on the evening of February 26, 2011, provide "sufficient circumstantial evidence … to believe, with some certainty, that Lt. Arias was the assailant[.]" (Pl. Opp. ¶ 8). Indeed, one of the "conventional rules" of civil litigation is that the plaintiff may prove his case based on circumstantial evidence alone. *Tyler* v. *Bethlehem Steel Corp.*, 958 F.2d 1176, 1184 (2d Cir. 1992). And there have been cases in which courts have relied on circumstantial evidence to establish personal involvement. *See, e.g.*, *Campbell* v. *City of New York,* No. 06 Civ. 5743 (HB), 2010 WL 2720589, at *9 (S.D.N.Y. June 30, 2010) (denying the defendants' motion for summary judgment where plaintiff's only evidence of a particular defendant detective's personal involvement was the plaintiff's own testimony that this detective accompanied an officer in transporting him to a location where the officer allegedly interrogated and assaulted the plaintiff); *Lasher* v. *City of Schenectady*, No. 02 Civ. 1395 (TJM), 2004 WL 1732006, at *7 (N.D.N.Y. Aug. 3, 2004) (finding that circumstantial evidence involving a defendant's height and location relative to the plaintiff was sufficient to infer that he was the officer who struck the plaintiff).

However, the Court cannot agree with Plaintiff that there is sufficient circumstantial evidence on the record to create a genuine dispute of material fact as to Defendant Arias's participation in the alleged interrogation.  There is not, for instance, a limited number of police officers present, as with Defendants Noto and O'Connell at the time of Plaintiff's arrest and in *Campbell*.  Nor is there a visual confirmation or description of the alleged perpetrator as in *Lasher*.  In short, Plaintiff has not provided evidence sufficient that a reasonable juror could find direct participation on the part of Lieutenant Arias.  *See Dockery*, 2006 WL 5893295, at *13 (citing *Provost* v. *City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)).  Summary judgment is thus warranted.

### 2. State Claims of Assault and Battery

#### a. Summary Judgment Is Granted as to Plaintiff's Claims of Assault and Battery Against Defendant Arias

"Federal excessive force claims and state law assault and battery claims against police officers are nearly identical."  *Graham* v. *City of New York*, 928 F. Supp. 2d 610, 624 (E.D.N.Y. 2013) (citing *Humphrey* v. *Landers*, 344 F. App'x 686, 688 (2d Cir. 2009) (summary order)).  "[W]ith the exception of the state actor requirement, the elements of a Section 1983 excessive force claim and state law assault and battery claims are substantially identical."  *Lloyd* v. *City of New York*, 14 Civ. 9968 (GHW), 2017 WL 1207838, at *19 (S.D.N.Y. Mar. 31, 2017) (citing *Chamberlain* v. *City of White Plains*, 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013) (internal quotation marks omitted)).  Therefore, for the reasons stated above, summary judgment is granted as to the state claims of assault and battery against Defendant Lieutenant Arias.  *See id.* (finding that "because

Plaintiff's excessive force claims based upon the pushing and handcuffing incidents must be decided by a jury, so too must her state law assault and battery claims"); *Castro* v. *Cty. of Nassau*, 739 F. Supp. 2d 153, 178 (E.D.N.Y. 2010) (denying summary judgment on state-law assault and battery claims where summary judgment was denied on § 1983 excessive force claim because "the same standard applies").

> **b.** **Summary Judgment Is Granted as to Plaintiff's Claims of Assault and Battery Against All Three Defendants for Failure to Meet Conditions Precedent**

> **i.** **Plaintiff Failed to Provide Notice to Individual Defendants**

Pursuant to New York law, "no tort action shall be prosecuted or maintained against a municipality or any of its officers, agents, or employees unless: [i] a notice of claim has been served against the [municipality]; [ii] the [municipality] has refused adjustment or payment of the claim; and [iii] the action is commenced within one year and ninety days after the event upon which the claim is based occurred." *Gibson* v. *Comm'r of Mental Health*, No. 04 Civ. 4350 (SAS), 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006) (citing N.Y. Gen. Mun. Law § 50-i). "[I]n a federal court, state notice-of-claim statutes apply to state-law claims." *Hardy* v. *N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). "This notice-of-claim requirement is 'construed strictly by New York state courts,' and '[f]ailure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of

action.'" *Berry* v. *Village of Millbrook*, 815 F. Supp. 2d 711, 724 (S.D.N.Y. 2011) (quoting *Hardy*, 164 F.3d at 793-94).

"[T]here is a split in [New York] appellate authority on the issue of whether a plaintiff is required to name individual municipal employees in a notice of claim in order to maintain a subsequent action against those employees." *Blake* v. *City of New York*, 51 N.Y.S.3d 540, 545 (2d Dep't 2017). The First Department has maintained that individual defendants must be named and that dismissal of a claim is warranted if they are not. *Tannenbaum* v. *City of New* York, 819 N.Y.S.2d 4, 5 (1st Dep't 2006) (citing *White* v. *Averill Park Cent. School Dist.*, 759 N.Y.S.2d 641 (Sup. Ct. Rensselaer Cnty. 2003)). The First Department, however, offered only limited analysis of the issue and relied exclusively on a 2003 trial court decision.  It later clarified that "underlying [the] decision in *Tannenbaum* was the purpose of requiring a notice of claim as a precondition to commencing a suit against a municipality, which is '[t]o enable the authorities to investigate, collect evidence and evaluate the merit of the claim.'" *Alvarez* v. *City of New York*, 22 N.Y.S.3d 362, 366-67 (1st Dep't 2015).

The greater weight of New York appellate authority disagrees with this reasoning.  The Fourth Department "conclude[d] that the courts [had] misapplied or misunderstood the law in creating, by judicial fiat, a requirement for notices of claim that goes beyond those requirements set forth in the statute." *Goodwin* v. *Pretorius*, 962 N.Y.S.2d 539, 545 (4th Dep't 2013).  It further reasoned,  "If the legislature had intended that there be a requirement

that the individual employees be named in the notices of claim, it could easily have created such a requirement." *Id.* The Second and Third Departments have since agreed. *See Pierce* v. *Hickey*, 11 N.Y.S.3d 321, 323 (3d Dep't 2015) (finding there was no "require[ment] that an individual municipal employee be named in the notice of claim"); *Blake* v. *City of New York*, 51 N.Y.S.3d 540, 545 (2d Dep't 2017) ("agree[ing] with the Third and Fourth Departments … [that] [l]isting the names of the individuals who allegedly committed the wrongdoing is not required").

Federal district courts in New York have varied in their treatment of the issue. *Compare Johnson* v. *City of New York,* No. 15 Civ. 8195 (GHW), 2017 WL 2312924, at *7 (S.D.N.Y. Mar. 26, 2017) (dismissing plaintiff's state-law claims against Individual Defendants where "[p]laintiff's notice of claim named as defendants only 'City of New York' and 'New York City Police Department,' and did not include [individual defendants by name], or even any unidentified 'John Doe' defendants"), *with Matthews* v. *City of New* York, No. 15 Civ. 2311 (ALC), 2016 WL 5793414, at *10 n.5 (S.D.N.Y. Sept. 30, 2016) ("find[ing] that failure to name individual defendants in a notice of claim is not an independently sufficient ground for dismissal").

Defendants argue that Plaintiff's state-law claims ought to fail as a matter of law for failure to name each Defendant in his Notice of Claim. (Def. Br. 19). Plaintiff provided the City his Notice of Claim on May 25, 2011. (Def. Ex. S (Notice of Claim)). The Notice was addressed to "City of New York" and "New York City Police Department." (*Id.*). In it, Plaintiff's then-counsel, Jason

A. Steinberger, elected not to name any individual or John Doe defendants. Plaintiff provides no explanation for this. In fact, he offers no response to Defendants' argument. Nor has he made any attempt to revise the Notice of Claim during the five-year pendency of this litigation.

This Court need not engage with the issue either. While the Court recognizes the split in New York appellate authority and within the Southern District, it will refrain from entering the fray given that Plaintiff's state-law claims for assault and battery fail on separate grounds.

### ii. Plaintiff Failed to Attend the 50-h Hearing

After receiving Plaintiff's Notice of Claim, the City exercised its right to demand a 50-h hearing, in order to question "the claimant relative to the occurrence and extent of the injuries or damages for which claim is made." N.Y. Gen. Mun. Law § 50-h(1). Notice of the 50-h Hearing was mailed to Plaintiff's counsel on June 20, 2011. (Def. Ex. T (Notice of 50-h Hearing); Def. Ex. X (Decl. of Michael Harary ¶ 8)). Neither Plaintiff nor his counsel appeared for the 50-h Hearing or requested an adjournment. (Def. 56.1 ¶ 22; Def. Reply 10). Plaintiff claims he did not receive the notice (Pl. 56.1 Opp. ¶ 6), but does not address whether Steinberger received one. Defendants argue that Plaintiff's state-law claims ought to be dismissed for failure to attend the 50-h Hearing, regardless of his reasoning. (*See* Def. Br. 19-20; Def. Reply 10).

"[I]f the claimant fails to appear at the hearing or request an adjournment or postponement," the state-law claims are precluded. *Gilliard* v. *City of New York*, No. 10 Civ. 5187 (NGG), 2013 WL 521529, at *16 (E.D.N.Y.

Feb. 11, 2013) (citing N.Y. Gen. Mun. Law § 50-h(5)) (internal quotations omitted). Here again, "[n]otice of claim requirements are construed 'strictly' and '[f]ailure to comply with these requirements ordinarily requires dismissal[.]" *Id.* (citing *Hardy*, 164 F.3d at 793-94). Plaintiff points to the absence of a certified mail receipt indicating that the notice was sent. However, "plaintiff's failure to attend a 50-h Hearing — *no matter the reason* — is a complete bar to his state law claims against the City." *Id.* (emphasis added). "Disregarding any proffered reason is also good policy: while the City must handle the rescheduling of thousands of 50-h Hearings, a plaintiff is only concerned with [his] own and is in a better position to ensure that the parties are on the same page." *Id.; but see Legal Servs. for the Elderly, Disabled, or Disadvantaged of W. New York, Inc.* v. *Cty. of Erie*, 3 N.Y.S.3d 497, 498 (4th Dep't 2015) (detainee's failure to appear for examination did not warrant dismissal of his complaint where detainee was unable to appear at hearing because he sustained severe brain injury and was permanently incapacitated).

What is more, there is no longer an opportunity to cure this defect as Plaintiff's state claims are time-barred by the statute of limitations. "[T]he action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based." N.Y. Gen. Mun. Law § 50-i. The statute of limitations would have run by May 26, 2012.

In sum, Plaintiff's failure to appear for the 50-h Hearing forecloses his state-law claims for assault and battery, and summary judgment is granted as

33

to those claims. *See Buie* v. *City of New York*, No. 12 Civ. 4390 (RJD), 2015 WL 6620230, at *6 (E.D.N.Y. Oct. 30, 2015) (dismissing claim where plaintiff stated that she never received notice of the hearing because it went to her previous attorney and the record did not show any attempt by plaintiff's new attorney to arrange a 50(h) hearing); *Maggio* v. *Palmer*, 810 F. Supp. 50, 52 (E.D.N.Y. 1993) (dismissing plaintiff's claim for failure to state a claim where he failed to appear for a 50-h hearing or reschedule it prior to the expiration of the statute of limitations).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED as to all state-law claims for assault and battery; GRANTED as to the § 1983 excessive force claims against Defendant Arias; and DENIED as to the § 1983 excessive force claims against Defendants Noto and O'Connell. Accordingly, the only remaining claims in this litigation are those of excessive force against Defendants Noto and O'Connell.

It is hereby ORDERED that the parties appear for a conference to set a trial in this matter on **July 20, 2017, at 4:00 p.m.** in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York, 10007.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:     July 5, 2017
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*Sent by First Class Mail to:*

Timothy John Kennedy
230 West 82nd Street, Apt. 1D
New York, NY 10024